[No. B081574. Second Dist., Div. Two. Dec. 21, 1994.]

THE PEOPLE, Plaintiff and Appellant, v.
ERIC JOHN KONGS, Defendant and Respondent.

## COUNSEL

Gil Garcetti, District Attorney, Brent Riggs, Ronald M. Geltz and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

Michael P. Judge, Public Defender, Albert J. Menaster, Douglas Goldstein and Kathy Quant, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**BOREN, P. J.**—Eric John Kongs was charged with the crimes of annoying or molesting a minor, using a minor to pose for visual depictions of sexual conduct, and possessing child pornography.

After Kongs was held to answer by a magistrate, the superior court set aside the information. We find that there was sufficient evidence to support the magistrate's ruling, and reverse the order setting aside the information.

### FACTS

Kongs encountered the victim in this case, Amanda C., at "family photo shoots." These are events at which numerous photographers take pictures of models of varying ages so that both the photographers and the models can develop portfolios. Amanda started posing as a model at photo shoots when she was nine years old.

Kongs photographed Amanda when she was 10 or 11 years old. His photography made her uncomfortable. Kongs would ask her to sit on a fence rail or playground attraction and spread her legs apart. He also instructed her

to put a finger on her chin and her other hand on her waist, in a suggestive manner. Sometimes, he would ask her to perform cartwheels or flips. Kongs would focus his camera on the area below her waist. He did not point the camera at her face. Amanda objected to her family and friends about Kongs's photography.

Amanda's mother recalled seeing Kongs at many photo shoots. He would always take pictures of children and young girls. She did not like the photographs she received from Kongs because he posed Amanda as if she were 16 or 17 years old instead of 10 and focused on Amanda's crotch. She was appalled when Kongs sent her a picture which made it appear that Amanda was nude beneath a tiny jacket.

The Los Angeles County Sheriff's Department launched an investigation to identify pedophiles who attend photo shoots. An undercover officer pretended to be a photographer and attended the photo shoots. He observed Kongs photographing girls under the age of 14 in poses where their legs would be spread and their panties or genitalia would be showing. While the girls were wearing shorts or skirts, Kongs would direct them to lift their legs and knees up in the air so as to expose their underwear, then focus his camera on the area between their legs. None of the models was nude during these photo shoots.

The sheriff's department executed a search warrant at Kongs's residence. They discovered numerous photographs and videotapes, the majority of which depicted "crotch shots of minors," according to an investigating officer. He could not verify whether Kongs took these photographs. There were also photographs of nude children under the age of 11.

Kongs was arrested on April 9, 1993. He waived his right to remain silent. When asked about the photographs of young girls' panties, Kongs analogized the feeling he obtained from these to the exhilaration one experiences during a roller coaster ride. Kongs described the exposure of the girls' panties as "a fetish."

Kongs was charged in an amended information with eight counts of annoying or molesting a child (Pen. Code, § 647.6), three counts of using a minor to pose for visual depictions of sexual conduct (Pen. Code, § 311.4, subd. (c)), and one count of possessing child pornography (Pen. Code, § 311.11, subd. (a)).

A magistrate held Kongs to answer on the charges following a preliminary hearing. Kongs demurred to the information. His demurrer was overruled.

However, the superior court set aside the information pursuant to Penal Code section 995, finding that Kongs had not committed a lewd and lascivious act with a minor, nor was any sexual conduct involved. The People appeal.

## DISCUSSION

### 1. *Standard of Review*

Penal Code section 995 permits the court to set aside an information on a finding that the defendant was committed without reasonable or probable cause. On appeal, the superior court's decision to set aside the information is disregarded, and the magistrate's determination holding the defendant to answer is directly reviewed. (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].)

■ " 'Our task is to determine whether the magistrate, acting as a person of ordinary prudence, could conscientiously entertain a reasonable suspicion that the defendant committed the crime charged. (*People* v. *Stansbury* (1968) 263 Cal.App.2d 499, 502 [67 Cal.Rptr. 827].) To that end, we draw every legitimate inference supported by the competent evidence and refrain from substituting our judgment for that of the magistrate. If the record demonstrates some showing of every element of the charge (*People* v. *Love* (1988) 203 Cal.App.3d 1505, 1507 [251 Cal.Rptr. 6]), we must affirm the magistrate's ruling denying the motion to set the charge aside.' " (*People* v. *Hwang* (1994) 25 Cal.App.4th 1168, 1175 [31 Cal.Rptr.2d 61], quoting *People* v. *Alonzo* (1993) 13 Cal.App.4th 535, 538 [16 Cal.Rptr.2d 656].)

### 2. *Freedom of Expression*

■ Kongs grounds his argument on the First Amendment right to freedom of expression. He asserts that the state's prosecution violates his constitutional right because it attempts to regulate his thoughts rather than child pornography.

■ In *New York* v. *Ferber* (1982) 458 U.S. 747, 756 [73 L.Ed.2d 1113, 1122, 102 S.Ct. 3348], the Supreme Court acknowledged that states are entitled to greater leeway in the regulation of child pornography than the court otherwise allows in obscenity cases.[1]

The *Ferber* opinion offers five reasons for allowing states to restrict pornographic depictions of children. First, the states have an interest in

---

[1]The standard for obscenity was stated in *Miller* v. *California* (1973) 413 U.S. 15 [37 L.Ed.2d 419, 93 S.Ct. 2607]. The *Miller* guidelines mandate that a state offense be "limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." (413 U.S. at p. 24 [37 L.Ed.2d at pp. 430-431].)

" 'safeguarding the physical and psychological well-being of a minor.' " (458 U.S. at pp. 756-757 [73 L.Ed.2d at p. 1122].) Second, these depictions are sexually abusive in that they are a permanent record of a child's participation and lead to the creation of networks which foster further exploitation. (*Id.* at p. 759 [73 L.Ed.2d at p. 1124].) Third, the advertising and selling of child pornography provides an economic motive for the illegal production of these materials. (*Id.* at p. 761 [73 L.Ed.2d at p. 1125].) Fourth, the value of these depictions is de minimis. (*Id.* at p. 762 [73 L.Ed.2d at pp. 1125-1126].) Fifth, recognizing that child pornography is outside the protections of the First Amendment is compatible with decisions making the content of speech sanctionable if the evils of the speech outweigh the expressive interests at stake. (*Id.* at pp. 763-764 [73 L.Ed.2d at pp. 1126-1127].)

The Supreme Court placed some limits on the category of child pornography which, like obscenity, is unprotected by the First Amendment. It specified that the prohibited conduct must be adequately defined by the applicable state law and that the offense be limited to works that visually depict sexual conduct by children below a certain age. The types of sexual conduct must also be limited and described. (458 U.S. at p. 764 [73 L.Ed.2d at p. 1127].) Forbidding "lewd exhibition of the genitals" is an example of a permissible regulation. (*Id.* at p. 765 [73 L.Ed.2d at p. 1128].) The trier of fact need not find that the material appeals to the prurient interest of the average person, nor find that it portrays sexual conduct in a patently offensive manner. The material at issue need not be considered as a whole. Criminal responsibility may not be imposed without some element of scienter on the part of the defendant. (*Id.* at pp. 764-765 [73 L.Ed.2d at pp. 1127-1128].)

Mindful of these guidelines, we shall examine the charges against Kongs to determine whether his freedom of expression is abridged by the charges against him.

3. *Charges of Annoying or Molesting a Child*

 ██ ██ Penal Code section 647.6 makes it a felony to "annoy [or molest] any child under the age of 18" if the individual charged with this crime has a prior felony child molestation conviction.[2] "Annoy and molest" are synonymous and mean to disturb or irritate, especially by continued or repeated acts; to vex, to trouble; to irk; or to offend. (*People* v. *Carskaddon* (1957) 49 Cal.2d 423, 426 [318 P.2d 4]; *People* v. *Thompson* (1988) 206 Cal.App.3d 459, 463 [253 Cal.Rptr. 564]; CALJIC No. 16.441.)

In interpreting Penal Code section 647.6, the courts have focused on the defendant's intent and an objective assessment of the defendant's conduct.

---

[2]Kongs has such a prior conviction.

" 'When the words annoy or molest are used in reference to offenses against children, there is a connotation of abnormal sexual motivation on the part of the offender. Although no specific intent is prescribed as an element of this particular offense, a reading of the section as a whole in the light of the evident purpose of this and similar legislation enacted in this state indicates that the acts forbidden are those motivated by an unnatural or abnormal sexual interest or intent with respect to children. It should be noted further that the section must be construed reasonably as setting up an objective test for annoyance or molestation; a childish and wholly unreasonable subjective annoyance, arising, for example, from a child's dislike for proper correction by a teacher, is not covered by the section. The annoyance or molestation which is forbidden is in no sense a purely subjective state on the part of the child.' " (*People* v. *Tate* (1985) 164 Cal.App.3d 133, 139 [210 Cal.Rptr. 117]; accord, *In re Gladys R.* (1970) 1 Cal.3d 855, 867-868 [83 Cal.Rptr. 671, 464 P.2d 127].)

For the most part, Penal Code section 647.6 has been applied to incidents of explicit sexual conduct, where a defendant: fondled a minor's genitals and had her touch his genitals (*People* v. *Moore* (1986) 185 Cal.App.3d 1005 [230 Cal.Rptr. 237]); touched a minor's genitals through her clothing (*People* v. *Monroe* (1985) 168 Cal.App.3d 1205 [215 Cal.Rptr. 51]); fondled and had sexual intercourse with a minor (*People* v. *Tate, supra,* 164 Cal.App.3d 133, and *People* v. *Epps* (1981) 122 Cal.App.3d 691 [176 Cal.Rptr. 332]); solicited a sex act from a minor (*People* v. *La Fontaine* (1978) 79 Cal.App.3d 176 [144 Cal.Rptr. 729]); grasped a minor by her buttocks and rubbed himself against her body (*People* v. *Moore* (1955) 137 Cal.App.2d 197 [290 P.2d 40]); exhibited his genitals to a minor (*People* v. *McNair* (1955) 130 Cal.App.2d 696 [279 P.2d 800]).

In some instances, however, the proscribed conduct was more ambiguous. In *People* v. *Thompson, supra,* 206 Cal.App.3d 459, the defendant followed the 12-year-old victim, who was riding a bicycle, in his car, slowly passing and repassing by her numerous times. At one point, the defendant shook his hand and moved his mouth as if whispering or pursing his lips. The victim became alarmed and asked a stranger for help. The appellate court found that this conduct was sufficient to sustain the defendant's conviction for annoying or molesting a minor under Penal Code section 647.6. (206 Cal.App.3d at p. 468.) In *In re Sheridan* (1964) 230 Cal.App.2d 365 [40 Cal.Rptr. 894], the defendants offered a ride to four minor females. It became apparent to the girls that the defendants were not taking them to their requested destination, so they asked to be let out of the car. The defendants refused, and drove to an isolated place in the hills. The girls escaped when the car stalled. The court found that the defendants' conduct constituted an act motivated by

unnatural or abnormal sexual interest in children. (230 Cal.App.2d at p. 372.)

Kongs's conduct in this case is at least as suggestive of an unnatural or abnormal sexual interest in children as the conduct found sanctionable in *Thompson* and *Sheridan.* Models attending photo shoots hope to develop marketable portfolios of their work. It is difficult to see how this goal is achieved by directing models to pose in awkward or compromising positions, then deliberately taking "crotch shots." This case is far removed from one in which a child's pubic area is innocently exposed when her garments are brushed aside by a passing zephyr or ordinary childhood activities. Under the circumstances, a trier of fact could reasonably conclude that Kongs's conduct in this case was motivated by an untoward sexual interest in young children. Indeed, Kongs told police that he received a roller-coaster-like thrill from his activities, and described it as a "fetish." A fact finder could also objectively conclude that the average person would be unhesitatingly irritated or offended by a photographer surreptitiously aiming his camera up a child's dress rather than photographing her face or entire clothed body.

▐ Our reading of Penal Code section 647.6 does not offend the First Amendment's guarantee of free expression. The Supreme Court has recognized that a state may legitimately sanction activities which amount to harmful *conduct* rather than "pure speech," particularly when the conduct in question involves the use of children to make sexual material for pedophiles. (*New York* v. *Ferber, supra,* 458 U.S. at pp. 770-771 [73 L.Ed.2d at p. 1131].)

Here, Kongs's conduct went much further than a neutral viewing of little girls in underwear for his private sexual pleasure. Rather, his viewing was combined with affirmative conduct which could ordinarily cause annoyance or offense to the subject of his attentions. (See *People* v. *Thompson, supra,* 206 Cal.App.3d at p. 466.) Kongs expressly instructed Amanda C. to pose in suggestive positions—with her legs spread apart—so as to facilitate his viewing and photographing of her crotch, thereby making Amanda an unwilling and unhappy participant in his sexual fetish.

Kongs's attempt to analogize his conduct to that of a photographer making a diaper advertisement misses the mark. It is understood that the parents or guardians of the model in the diaper advertisement are willing to display the toddler's diaper-clad bottom for commercial purposes. That is not the case here. Amanda C. did not pose for the purpose of having one small portion of her anatomy photographed—a portion she did not care to expose, and which

Kongs could view only by directing his model to arrange her legs in an odd or unnatural manner. Kongs's subterfuge of pretending to be a legitimate photographer while clandestinely trying to peek at the models' genital areas differentiates this case from that of the diaper commercial maker, and is the factor that makes Kongs's voyeuristic conduct annoying or offensive to the average person under Penal Code section 647.6. If any analogy is to be made here, it would more appropriately be made to a "peeping Tom" rather than to a diaper commercial maker.

Direct affirmative conduct against a child distinguishes this case from *New York* v. *Ferber*. Ferber, a bookstore owner, was charged with unlawfully disseminating child pornography after selling two sexually explicit films to undercover officers. There was no proof that Ferber personally engaged in any annoying or offensive conduct with children to create these films, unlike the case at bar. The limitations the Supreme Court placed on criminalizing the mere distribution (rather than the acts leading to the creation) of material depicting sexual conduct by children do not apply in this context.[3] It is of no moment whether Kongs's photographs of Amanda C. displayed actual or deviate sexual intercourse; bestiality; masturbation; sado-masochistic abuse; or lewd exhibition of the genitals. (*New York* v. *Ferber, supra*, 458 U.S. at p. 765 [73 L.Ed.2d at pp. 1127-1128].) The deciding factor for purposes of a Penal Code 647.6 charge is that the defendant has engaged in offensive or annoying sexually motivated *conduct* which invades a child's privacy and security, conduct which the government has a substantial interest in preventing and which is unrelated to the suppression of free expression.

### 4. *Using a Minor to Pose for Sex Acts*

 Penal Code section 311.4, subdivision (c), authorizes felony charges against someone who "knowingly promotes, employs, uses, persuades, induces, or coerces a minor under the age of 17 . . . to engage in or assist others to engage in either posing or modeling alone or with others for purposes of preparing a film, photograph, negative, slide, or live performance involving sexual conduct by a minor under the age of 17 years alone or with other persons or animals . . . . It shall not be necessary to prove commercial purposes in order to establish a violation of this subdivision."

---

[3]In regard to the creation of sexually explicit filmed material, our state Supreme Court has concluded that a photographer who filmed a minor performing various sex acts could not be charged with pandering; however, the court noted that this constituted independently unlawful conduct, namely, aiding and abetting intercourse with a minor. The right to photograph someone cannot be confused with unlawful conduct aimed at the child himself or herself. (*People* v. *Freeman, supra*, 46 Cal.3d at pp. 428-429, discussing *People* v. *Fixler* (1976) 56 Cal.App.3d 321 [128 Cal.Rptr. 363].)

The statute describes the forbidden "sexual conduct" with sufficient particularity to satisfy the specificity requirement in *Ferber*.[4] It also contains the scienter element required by *Ferber*. On its face, Penal Code section 311.4 passes constitutional muster. (*People* v. *Cantrell* (1992) 7 Cal.App.4th 523, 542 [9 Cal.Rptr.2d 188].)

■ To determine whether Kongs used or induced a minor to pose for purposes of preparing a film or photograph involving sexual conduct, the circumstances of this case require us to ask whether there was sufficient evidence of "exhibition of the genitals, pubic, or rectal area for the purpose of sexual stimulation of the viewer" to sustain the magistrate's decision to hold Kongs to answer on these charges. (Pen. Code, § 311.4, subd. (d).) Kongs maintains that the exhibition which occurred here was innocuous and "innocent." He reasons that because the genitals of Amanda C. and the other models were covered by panties or a swimsuit at the time the photographs were taken, no sexual conduct can be found, regardless of his intent.

■■ We disagree with Kongs's assertion that sexual conduct has to be nude to be lewd. Nude is not synonymous with lewd. No one would seriously argue that Michelangelo's statue of David is lewd, even *sans* an artificial fig leaf. By the same token, a photograph of tots posing suggestively while dressed in corsets, garters, and hosiery could well be considered lewd because such attire is so inappropriate to their age and is obviously designed to elicit a sexual response in a viewer.

Clearly, the context in which the sexual conduct occurs must be considered. A diaper commercial is simply not on the same par as this case. Here, child models were posing for the purpose of developing photo portfolios. The expectation on the part of the models is that photographs would be taken of their faces or their entire person. Instead, Kongs diminished his subjects by focusing his camera on their private parts, turning the models into sexual objects rather than treating them as whole people. "The pornographic photographer subordinates the humanity of his subject to the sexuality of the

---

[4]The statute defines "sexual conduct" as any of the following, whether actual or simulated: "sexual intercourse, oral copulation, anal intercourse, anal oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, penetration of the vagina or rectum by any object in a lewd or lascivious manner, exhibition of the genitals, pubic, or rectal area for the purpose of sexual stimulation of the viewer, any lewd or lascivious sexual act as defined in Section 288, or excretory functions performed in a lewd or lascivious manner, . . ." (Pen. Code, § 311.4, subd. (d).)

Penal Code section 288, which is incorporated by reference into Penal Code section 311.4, applies to those who "willfully and lewdly commit any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the child . . . ."

subject" and makes his subject "a mere means [of] serving the voyeur's purposes." (*U.S.* v. *Wiegand* (9th Cir. 1987) 812 F.2d 1239, 1245.)

The *Ferber* case instructs us that states may legitimately protect the dignity and psychological well-being of children by forbidding child pornography. That purpose is served by construing Penal Code section 311.4 to encompass not only a nude exhibition of the pubic or rectal area, but, in appropriate cases, exhibitions focusing unnaturally upon a child's underwear- or bikini-clad pubic or rectal area. Notably, the Legislature did not require a "nude" exhibition in Penal Code section 311.4, subdivision (d). Presumably, the Legislature was aware that for some pedophiles, furtive glimpses of a child's underwear-covered genitals are sexually stimulating. The stimulation these pedophiles feel is constitutionally protected. Nevertheless, the Legislature could reasonably conclude that such photography is unacceptable if the photographer obtains his pictures by exploiting his subject and reducing the child to a sexual object in order to satisfy the cravings of an audience of pedophiles. A child should not have to face a lifetime of knowing that a permanent record has been made of his or her abasement.

Numerous federal courts have adopted a list of six factors for a trier of fact to consider when determining what constitutes a "lascivious exhibition of the genitals or pubic area." (18 U.S.C. § 2256(2)(E); *United States* v. *Dost* (S.D.Cal. 1986) 636 F.Supp. 828, 831, affirmed *sub nom. U.S.* v. *Wiegand, supra,* 812 F.2d 1239; *U.S.* v. *Villard* (3d Cir. 1989) 885 F.2d 117, 122; *U.S.* v. *Nolan* (1st Cir. 1987) 818 F.2d 1015, 1019, fn. 5; *U.S.* v. *Arvin* (9th Cir. 1990) 900 F.2d 1385, 1390-1391, fn. 4; *U.S.* v. *Wolf* (10th Cir. 1989) 890 F.2d 241, 244; *U.S.* v. *Mr. A.* (E.D.Mich. 1991) 756 F.Supp. 326, 328.)[5]

We find the factors used by the federal courts useful in applying Penal Code section 311.4. As one court has observed, exhibiting the genitals or pubic area for the purpose of sexual stimulation of the viewer means the same thing as a lascivious exhibition of the genitals. (*U.S.* v. *Wiegand, supra,* 812 F.2d 1239, 1243.) The court noted that the defendant's photography "was a lascivious exhibition because the photographer arrayed it to suit his peculiar lust." (*Id.* at p. 1244.)

Thus, the factors for a fact finder to consider when determining whether there has been a prohibited exhibition of a minor child's genitals, pubic, or rectal area are:

---

[5]Most of these cases concerned the transportation of visual depictions of minors engaging in sexually explicit conduct. (18 U.S.C. § 2252(a).) In one case, a person employed, used, induced, enticed or coerced a minor to engage in sexually explicit conduct to produce a visual depiction of that conduct. (18 U.S.C. § 2251; *U.S.* v. *Mr. A., supra,* 756 F.Supp. 326.) In each instance, the federal law defined sexually explicit conduct as lascivious exhibition of the genitals or pubic area, i.e., essentially the same terms employed in Penal Code section 311.4.

1) whether the focal point is on the child's genitalia or pubic area;

2) whether the setting is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the child's conduct suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the conduct is intended or designed to elicit a sexual response in the viewer.

With the exception of factor No. 6, which is a required element of a Penal Code section 311.4 violation, a trier of fact need not find that all of the first five factors are present to conclude that there was a prohibited exhibition of the genitals or pubic or rectal area: the determination must be made based on the overall content of the visual depiction and the context of the child's conduct, taking into account the child's age. (See *United States* v. *Dost*, *supra*, 636 F.Supp. 828, 832, and *U.S.* v. *Wolf*, *supra*, 890 F.2d at p. 245.)

In this instance, a trier of fact could find that the focal point of Kongs's photography was on a child's pubic area; that the legs-apart poses were sexually suggestive and unnatural; that Kongs's instructions to have Amanda C. place a finger on her chin and a hand at her waist suggested sexual coyness; and that the photographs were intended to elicit a sexual response in the viewer.

Applying the six factors to a case virtually identical to the present appeal, the Court of Appeals for the Third Circuit recently concluded that a lewd or lascivious exhibition does not require that a child's genitals be visible or even discernible through clothing. (*U.S.* v. *Knox* (3d Cir. 1994) 32 F.3d 733, 746, cert. den. (1995) __ U.S. __ [130 L.Ed.2d 782, 115 S.Ct. 897].) Much like Kongs, Knox filmed young girls between the ages of 10 and 17, directing them to strike provocative poses for the camera. The pictured children wore bathing suits, leotards, underwear, or other abbreviated attire which concealed their genitals. The scenes were shot in an outdoor playground or park-like setting where children are normally found. As here, "[t]he photographer would zoom in on the children's pubic and genital area

and display aclose-up view for an extended period of time. . . . The films . . . clearly were designed to pander to pedophiles." (*Id.* at p. 737.)

The federal court observed that the exhibition of genitals proscribed by statute "means a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer. Such a definition does not contain any requirement of nudity . . . or suggest a requirement that the contours of the genitals or pubic area be discernible or otherwise visible through the child subject's clothing." (32 F.3d at pp. 745-746.) Prolonged close-up views of the children's genital areas through thin but opaque clothing put these body parts "on display" to "attract notice," the court wrote. Moreover, the child subjects "were shown specifically spreading or extending their legs to make their genital and pubic region entirely visible to the viewer" and were posing in an adult manner. (*Id.,* at p. 747.) This "unnatural focus[] on a minor child's clothed genital area with the obvious intent to produce an image sexually arousing to pedophiles" is precisely the harm addressed by the child pornography laws. (*Id.* at p. 750.)

Kongs looks for support to the Fifth District's opinion in *People* v. *Wallace* (1992) 11 Cal.App.4th 568, 575 [14 Cal.Rptr.2d 67]. In *Wallace,* the defendant encouraged two teenaged girls to expose their bodies while he filmed them. A videotape showed the girls removing clothing as if performing a striptease. Two boys participated in this activity and one of them touched a girl's breasts. Wallace focused his camera primarily on the girls' buttocks and breasts. The girls undressed as far as their underwear or bikinis.

The *Wallace* court reversed the defendant's conviction because the jury was not instructed that Penal Code section 288 (which is incorporated by reference into Penal Code section 311.4) requires a lewd, lascivious or sexual touching, not just "any touching." (11 Cal.App.4th at pp. 571-572.) The court also concluded that the evidence failed to show an exhibition of the genital, pubic or rectal area. (11 Cal.App.4th at pp. 582-583.) We do not arrive at the same conclusion in this case.

5. *Possession of Child Pornography*

In count 12 of the amended information, Kongs is charged with the misdemeanor crime of possessing child pornography. Penal Code section 311.11, subdivision (a), states: "Every person who knowingly possesses or controls any matter, the production of which involves the use of a person under the age of 14 years, knowing that the matter depicts a person under the age of 14 years personally engaging in or simulating sexual conduct, as

defined in subdivision (d) of Section 311.4, is guilty of a public offense
. . . ."

 While the right to possess adult pornography in the privacy of one's home is protected (*Stanley* v. *Georgia* (1969) 394 U.S. 557 [22 L.Ed.2d 542, 89 S.Ct. 1243]), this right does not attach to the possession of child pornography. In *Osborne* v. *Ohio* (1990) 495 U.S. 103 [109 L.Ed.2d 98, 110 S.Ct. 1691], the Supreme Court limited *Stanley* and upheld a state statute outlawing the viewing or possession of child pornography in one's home against a First Amendment challenge.

 The same principles we discussed in the preceding section apply here. With the incorporation of Penal Code section 311.4 into the possession statute, the question is again presented whether the seized material portrays "sexual conduct," which for our purposes means the "exhibition of the genitals, pubic, or rectal area for the purpose of sexual stimulation of the viewer." (Pen. Code, § 311.4, subd. (d).)

The photographs and videotapes seized from Kongs's residence depict minor children, some under the age of 14, in various poses at photo shoots.[6] In some instances, the materials capture panty-covered pubic and rectal areas exposed when the models were sitting, bending over, or holding their legs up while wearing skirts. There is much "zooming in" for sustained close-ups on the models' panty- or bikini-clad crotch areas. In one instance, the subjects are unwitting children sitting on a curb watching a parade go by, in a portion of the videotape appropriately titled "Panties on Parade."

A trier of fact could find that the seized material, with its unrelenting focus on the area between the models' legs, constituted an exhibition of the genital, pubic or rectal area for the purpose of sexually stimulating the viewer.

### Disposition

The order setting aside the information is reversed, and the case is remanded to the superior court for further proceedings.

Fukuto, J., and Nott, J., concurred.

On January 18, 1995, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 13, 1995.

---

[6]The videotapes also show unclad "naturists" frolicking at the beach, accompanied by a pseudoeducational voice-over and Disney cartoons.