**Randall LOGSTON, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 95–CA–003180–MR.**

Court of Appeals of Kentucky.

Jan. 23, 1998.

Rehearing Denied March 13, 1998.

Discretionary Review Denied by Supreme Court Aug. 26, 1998.

Jon Larson, Lexington, for Appellant.

A.B. Chandler, III, Attorney General, Gregory C. Fuchs, Assistant Attorney General, Kirk Ogrosky, Assistant Attorney General, Frankfort, for Appellee.

Before HUDDLESTON, JOHNSON and KNOPF, JJ.

*OPINION*

JOHNSON, Judge.

Randall Logston, Jr. (Logston) appeals from a Fayette Circuit Court judgment en-

---

tered on November 14, 1995, that sentenced him to ten years in prison after he entered a Kentucky Rules of Criminal Procedure (RCr) 8.09 conditional plea of guilty[1] to one count of use of a minor under the age of sixteen in a sexual performance. (Kentucky Revised Statute (KRS) 531.310(1) and (2)(b)). We affirm.

Logston admitted to inducing a twelve-year old girl who lived across the street from him to try on and model two bathing suits in his home. While the young girl believed she was undressing and dressing in private, Logston had secretly hidden in the bedroom a video camera that he used to tape the girl while she was trying on the bathing suits. The videotape showed the young girl's exposed breasts, buttocks and pubic area. The videotape of the nude young girl was found in Logston's home dubbed onto a commercially available sexually explicit adult videotape. Approximately one hundred bathing suits and negligees were found in Logston's home, and he admitted to having a fetish for this type of clothing. Logston claims on appeal that the videotape of the twelve-year-old victim in the nude is not obscene under Kentucky law, and that his conviction must be set aside on the grounds that it would be unconstitutional to enforce the statute under the facts of this case.[2]

Since the decision in this case turns on the definitions used in the statutes, we begin our analysis by addressing the statutory definitions that are at issue. KRS 531.310(1) provides: "A person is guilty of the use of a minor in a sexual performance if he employs, consents to, authorizes or *induces a minor to engage in a sexual performance* [emphasis added]." KRS 531.300(6) provides: " 'Sexual performance' means any *performance* or part thereof which includes *sexual conduct by a minor* [emphases added][.]" KRS 531.300(5) states that "performance" means in part "any ... motion picture...." "Sexual conduct by a minor" is defined at KRS 531.300(4), as follows:

(a) Acts of masturbation, homosexuality, lesbianism, beastiality, sexual intercourse, or deviant sexual intercourse, actual or simulated;

(b) Physical contact with, or willful or intentional exhibition of the genitals;

(c) Flagellation or excretion for the purpose of sexual stimulation or gratification; or

(d) The *exposure, in an obscene manner, of the unclothed or apparently unclothed human male or female genitals, pubic area or buttocks, or the female breast,* whether or not subsequently obscured by a mark placed thereon, or otherwise altered, in any resulting motion picture, photograph or other visual representation, exclusive of exposure portrayed in matter of a private, family nature not intended for distribution outside the family [emphasis added][.]

For purposes of KRS 531.310, "obscene" means that "the predominate appeal of the *matter* taken as a whole is to *a prurient interest in sexual conduct involving minors* [emphases added][.]" KRS 531.300(3). "Matter" means in part "any ... motion picture...." KRS 531.300(2). It is agreed by the parties that the definition at issue in this case is the definition of "sexual conduct by a minor" found at KRS 531.300(4)(d).

Logston argues that "mere nudity of the minor was not 'obscene' sexual conduct." We believe that this issue can be narrowly stated as whether the videotape depicting the twelve-year-old nude girl exposing her breasts, buttocks and pubic area while she is in the process of changing her clothes, has as its predominate appeal, when taken as a whole, a prurient interest in sexual conduct involving a minor. We conclude that it does. This conclusion is based upon Logston's carefully planned manipulation of this young girl dressing and undressing in sexually appealing clothing, his surreptitiously videotaping

---

1. RCr 8.09 permits a defendant to enter a conditional plea of guilty while reserving the right to appeal from "the adverse determination of any specified trial or pretrial motion." If the defendant is successful on appeal, he is allowed to withdraw the plea.

2. *See generally* Bejamin J. Vernia, Annotation, *Validity, Construction, and Application of State Statutes or Ordinances Regulating Sexual Performance by Child,* 42 A.L.R.5th 291 (1996).

of her in the nude while her breasts, buttocks and pubic area were exposed and his dubbing of that videotape onto a sexually explicit adult videotape.

We begin our case law decision with *Mattingly v. Commonwealth*, Ky.App., 878 S.W.2d 797 (1993). While *Mattingly* is factually distinguishable from the case at bar, it provides some helpful discussion of the relevant issues. In *Mattingly*, the eleven-year-old girl was photographed with her knowledge in various stages of undressing, including being totally nude. Since the victim's conduct included the "willful or intentional exhibition of the genitals," the sexual conduct by a minor at issue in *Mattingly* involved the definition under KRS 531.300(4)(b). To the extent that *Mattingly* discusses the KRS 531.300(4)(b) definition, it is not in point. However, *Mattingly* also had at issue the definition of sexual conduct by a minor at KRS 531.300(4)(d)—the same issue that is before us. In fact, this Court in *Mattingly* went so far as to state that the conduct set out in KRS 531.300(4)(d) did not "enjoy the protection of the First Amendment[.]" *Id.* at 799.

*Mattingly* correctly recognized the importance of *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). To fully understand *Mattingly* and the Kentucky statutory scheme regarding sexual exploitation of minors, we too must examine *Ferber*. In *Ferber* the Supreme Court of the United States stated: "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Id.*, 458 U.S. at 757, 102 S.Ct. at 3355. *See also Mattingly*, 878 S.W.2d at 799. While the two films at issue in *Ferber* were "devoted almost exclusively to depicting young boys masturbating[,]" the Supreme Court discussed in broad terms the First Amendment considerations of a state legislature prohibiting the "dissemination of material which shows children engaged in sexual conduct, regardless of whether such material is obscene[.]" *Id.*, 458 U.S. at 752, 753, 102 S.Ct. at 3352. The Supreme Court noted that *Ferber* constituted its "first examination of a statute directed at and limited to depictions of sexual activity involving children."

*Id.*, 458 U.S. at 753, 102 S.Ct. at 3352–53. In discussing obscenity, the Supreme Court in *Ferber* stated that in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), "a majority of the Court agreed that a 'state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.'" *Id.*, 458 U.S. at 755, 102 S.Ct. at 3353. The Supreme Court then contrasted the constitutional issues regarding child pornography statutes with the constitutional issues regarding obscenity statutes as follows:

Like obscenity statutes, laws directed at the dissemination of child pornography run the risk of suppressing protected expression by allowing the hand of the censor to become unduly heavy. For the following reasons, however, we are persuaded that the States are entitled to greater leeway in the regulation of pornographic depictions of children.

*First.* It is evident beyond the need for elaboration that a State's interest in "safeguarding the physical and psychological wellbeing of a minor" is "compelling." ... "A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens."

. . . .

The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.

. . . .

The legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child. That judgment, we think, easily passes muster under the First Amendment.

*Second.* The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation

and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled.

. . . .

Respondent does not contend that the State is unjustified in pursuing those who distribute child pornography. Rather, he argues that it is enough for the State to prohibit the distribution of materials that are legally obscene under the *Miller* test. While some States may find that this approach properly accommodates its interests, it does not follow that the First Amendment prohibits a State from going further. The *Miller* standard, like all general definitions of what may be banned as obscene, does not reflect the State's particular and more compelling interest in prosecuting those who promote the sexual exploitation of children. Thus, the question under the *Miller* test of whether a work, taken as a whole, appeals to the prurient interest of the average person bears no connection to the issue of whether a child has been physically or psychologically harmed in the production of the work. Similarly, a sexually explicit depiction need not be "patently offensive" in order to have required the sexual exploitation of a child for its production. In addition, a work which, taken on the whole, contains serious literary, artistic, political, or scientific value may nevertheless embody the hardest core of child pornography. "It is irrelevant to the child [who has been abused] whether or not the material ... has a literary, artistic, political or social value." Memorandum of Assemblyman Lasher in Support of § 263.15. We therefore cannot conclude that the *Miller* standard is a satisfactory solution to the child pornography problem.

*Third.* The advertising and selling of child pornography provide an economic motive for and are thus an integral part of the production of such materials, an activity illegal throughout the Nation. . . .

*Fourth.* The value of permitting live performances and photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not *de minimis.* We consider it unlikely that visual depictions of children performing sexual acts or lewdly exhibiting their genitals would often constitute an important and necessary part of a literary performance or scientific or educational work. . . .

*Fifth.* Recognizing and classifying child pornography as a category of material outside the protection of the First Amendment is not[ ] incompatible with our earlier decisions. . . . When a definable class of material, such as that covered by § 263.15, bears so heavily and pervasively on the welfare of children engaged in its production, we think the balance of competing interests is clearly struck and that it is permissible to consider these materials as without the protection of the First Amendment.

*Ferber,* 458 U.S. at 756–764, 102 S.Ct. at 3354–58 (footnotes omitted).

 The prohibition against "sexual conduct by a minor" set forth in KRS 531.300(4) is directed at forbidding child pornography; therefore, under *Ferber* the state is not required to limit that prohibition to obscene sexual conduct as obscenity is defined in *Miller.* Rather, as the Supreme Court in *Ferber* stated:

The test for child pornography is separate from the obscenity standard enunciated in *Miller,* but may be compared to it for purpose of clarity. The *Miller* formulation is adjusted in the following respects: A trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole.

*Id.,* 458 U.S. at 764, 102 S.Ct. at 3358. Thus, the definition of "obscene" at KRS 531.300(3) is constitutional under the ruling of the Supreme Court in *Ferber.*

Having determined that KRS 531.310 is constitutional, we will now address the question of whether Logston's conduct is covered by the statute. We find two cases to be persuasive in determining whether Logston's actions violated KRS 531.300(4)(d). In *Peo-*

*ple v. Batchelor*, 800 P.2d 599 (Colo.1990), the Supreme Court of Colorado affirmed the conviction of a father for sexual exploitation of his nine-year-old daughter on the theory that the photographs he had taken of the young girl depicted "erotic nudity." The statute defines "erotic nudity" in part as follows:

> [T]he display of the ... undeveloped or developing genitals or pubic area of the human male or female child, ... or the undeveloped or developing breast area of the human female child, for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved.

*Id.* at 600, note 1. While the young girl was asleep, her father photographed her without her knowledge. The photographs showed her in the nude from the waist down. Before photographing her, the father had moved her body into various positions to expose her genitals and anus for close-up pictures. The Court noted that the statute "contains sufficiently particularized standards so that it is not unconstitutionally vague.... Thus, only those depictions of nudity taken for the purpose of sexual gratification or stimulation are proscribed by the statute." *Id.* at 603. The Court held that there "was sufficient evidence from which the trier of fact could conclude beyond a reasonable doubt that Batchelor took the photographs for the purpose of sexual gratification as required by the statute." *Id.* at 605.

In a California case, *People v. Kongs*, 30 Cal.App.4th 1741, 37 Cal.Rptr.2d 327 (1995), the Court of Appeal reversed the trial court's dismissal of various charges against the defendant including "three counts of using a minor to pose for visual depictions of sexual conduct[.]" *Id.*, 30 Cal.App.4th at 1747, 37 Cal.Rptr.2d at 330. The statute at issue "authorizes felony charges against someone who 'knowingly ... induces ... a minor under the age of 17 ... to engage in ... posing ... for purposes of preparing a ... photograph ... involving sexual conduct by a minor under the age of 17 years....'" *Id.*, 30 Cal.App.4th at 1752, 37 Cal.Rptr.2d at 333. "The statute defines 'sexual conduct' as ... 'exhibition of the genitals, pubic, or rectal area for the purpose of sexual stimulation of the viewer[.]'" *Id.*, 30 Cal.App.4th at 1753, note .4, 37 Cal.Rptr.2d at 333, note 4. The Court held that "[t]he statute describes the forbidden 'sexual conduct' with sufficient particularity to satisfy the specificity requirement in *Ferber*." *Id.*, 30 Cal.App.4th at 1753, 37 Cal.Rptr.2d at 333.

Kongs' conduct included commercially photographing young girls while they were fully clothed but posed in such a manner as to expose their underwear. The photographs at issue focused on the area between the young girls' legs and were referred to as "crotch shots." Kongs admitted that the photographs of the young girls' panties gave him the feeling of "exhilaration" and described it as "a fetish." *Id.*, 30 Cal.App.4th at 1747, 37 Cal.Rptr.2d at 330. In applying the California statute, the Court noted six factors that have been used by numerous federal courts "for a trier of fact to consider when determining what constitutes a 'lascivious exhibition of the genitals or pubic area.'" *Id.*, 30 Cal.App.4th at 1754, 37 Cal.Rptr.2d at 334. In holding that there was sufficient evidence to try Kongs, the Court stated: "This 'unnatural focus[ ] on a minor child's clothed genital area with the obvious intent to produce an image sexually arousing to pedophiles' is precisely the harm addressed by the child pornography laws." *Id.*, 30 Cal.App.4th at 1756, 37 Cal.Rptr.2d at 335 *quoting U.S. v. Knox*, 32 F.3d 733, 750 (3rd Cir.1994), *cert. den.*, 513 U.S. 1109, 115 S.Ct. 897, 130 L.Ed.2d 782. 513 U.S. 1109, 115 S.Ct. 897, 130 L.Ed.2d 782 (1995).

■ Thus, the Court in *Batchelor* concluded that the nude photographs of the sleeping daughter depicted "erotic nudity" because they were for the purpose of "sexual gratification." The Court in *Kongs* concluded that the "crotch shots" of the young models exhibited the pubic area for the "purpose of sexual stimulation of the viewer." And, we conclude that the videotape at issue herein depicts the victim in a manner that "the predominate appeal of the matter taken as a whole is to a prurient interest in sexual conduct involving a minor." KRS 531.300.

Logston's other arguments that rely upon *Miller v. California, supra,* and *Bach v. Commonwealth,* Ky.App., 703 S.W.2d 489

(1985), are without merit. As thoroughly discussed previously, *Ferber* provides the constitutional standards for child pornography, not *Miller.* In *Bach* this Court specifically noted that the Legislature had not amended the definition of "obscene" as defined at KRS 531.300(3), and this Court applied the then existing definition of "obscene" which followed the *Miller* standard. In apparent response to *Bach,* which was rendered on November 22, 1985, the Legislature during its 1996 Regular Session changed the definition of "obscene" at KRS 531.300(3) to its current version. The judgment of the Fayette Circuit Court is affirmed.

KNOPF, J., concurs.

HUDDLESTON, J., dissents.