[No. B170056. Second Dist., Div. Eight. Aug. 24, 2004.]

In re ULYSSES D. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
WALTER D. et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 2., 3., and 4. of the Discussion.

COUNSEL

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant Walter D.

Tyna Thall Orren, under appointment by the Court of Appeal, for Defendant and Appellant Yvonne M.

Lloyd W. Pellman, County Counsel, and Pamela S. Landeros, Deputy County Counsel, for Plaintiff and Respondent.

Mary Elizabeth Handy, under appointment by the Court of Appeal, for Minors.

OPINION

**RUBIN, J.**—Father Walter D., mother Yvonne M., and children Ulysses D. and Lorelie H. appeal from the dependency court's judgment. We modify the judgment and, as modified, affirm.

## FACTS AND PROCEDURAL BACKGROUND

Ulysses was born in 1998 and his sister, Lorelei, was born in 2000. In August 2002, the Los Angeles County Department of Children and Family Services (the department) filed a petition under Welfare and Institutions Code section 300

alleging mother Yvonne M. had physically abused Ulysses by hitting him.[1] The court detained the children, but shortly thereafter returned them to mother conditioned on her completing a parenting class. In December 2002, father Walter D., who had been in prison when mother hit Ulysses, was released from prison and moved back in with mother and children. Two months later he was rearrested and returned to prison for an offense unrelated to the dependency proceedings.

In the meantime, Glendale police had begun investigating mother and father for taking several photographs of themselves and the children in various states of undress while father was out of prison. (We will describe these pictures in further detail in the Discussion section of this opinion.) Based on the photographs, the police arrested mother, and the department amended its petition to allege parents had engaged in inappropriate sexual behavior in front of the children, putting the children at risk of sexual abuse. Mother and father pleaded guilty to one misdemeanor count each of committing an immoral act before a child and were sentenced to time already served. (Pen. Code, § 273g.)

The dependency court thereafter sustained the department's petition. It found mother had inappropriately disciplined Ulysses by hitting him, thus placing him and his sister at risk of harm. It also found parents had engaged in inappropriate sexual activity in the children's presence, which constituted child sexual abuse. The court placed the children with mother under the department's supervision in the paternal grandmother's home. The court granted father reunification services and visitation, but ordered him not to live with his children. Parents and children filed notices of appeal.

## DISCUSSION

### 1. *Photos Were Sexual Abuse*

#### i. *The Law*

■ The court's assertion of jurisdiction over parents and children for the photographs rests on a chain of linked statutes and cross-referenced definitions. The overarching statute is Welfare and Institutions Code section 300, subdivision (d) (section 300), which establishes jurisdiction when parents sexually abuse a minor or pose a substantial risk of doing so. That statute looks to Penal Code, section 11165.1 (section 11165.1) to define "sexual abuse." Subdivision (c) of section 11165.1—the only subdivision of that

---

[1] The petition contained other allegations of abuse which were not sustained and are thus irrelevant to this appeal.

statute which the department argues applies here—equates sexual abuse of children with their "sexual exploitation," which it defines in one of three ways. First, hiring a minor to engage in "sexual conduct" in child pornography, or possessing or distributing such pornography. (Pen. Code, §§ 11165.1, subd. (c)(1), 311.2, 311.4, subd. (a).) Second, posing a child to be photographed participating in obscene sexual conduct. (§ 11165.1, subd. (c)(2).) Or third, developing a picture of a child engaged in such conduct. (§ 11165.1, subd. (c)(3).) Section 11165.1, subdivision (c) does not define "sexual conduct," but scattered throughout its clauses are references to Penal Code sections 311.3 and 311.4, which do define "sexual conduct." Among other ways, those statutes describe it as including "[e]xhibition of the genitals . . . for the purpose of sexual stimulation of the viewer." (Pen. Code, §§ 311.3, subd. (b)(5), 311.4, subd. (d)(1).)

*People v. Kongs* (1994) 30 Cal.App.4th 1741 [37 Cal.Rptr.2d 327] (*Kongs*), establishes criteria for determining whether a photograph is intended to stimulate a viewer by emphasizing a child's genitals. The *Kongs* guidelines consider "1) whether the focal point is on the child's genitalia . . . ; [¶] 2) whether the setting is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; [¶] 3) whether the child is in an unnatural pose, or in inappropriate attire, considering the age of the child; [¶] 4) whether the child is fully or partially clothed, or nude; [¶] 5) whether the child's conduct suggests sexual coyness or a willingness to engage in sexual activity; [¶] 6) whether the conduct is intended or designed to elicit a sexual response in the viewer." (*Id.* at p. 1755.) The *Kongs* court explained that its criteria were not equally important and a photograph of a naked child did not need to satisfy each criteria for the photograph to show sexual conduct. The court stated, "With the exception of factor No. 6 [conduct intended to elicit sexual response], a trier of fact need not find that all of the first five factors are present to conclude that there was a prohibited exhibition of the genitals . . . : the determination must be made based on the overall content of the visual depiction and the context of the child's conduct, taking into account the child's age. [Citations.]" (*Ibid.*)

ii. *The Photographs*

Mother took the following pictures in which a child appeared:

**Photograph 10.** Mother took this picture in the living room, where, because the apartment was cramped, she and father slept and had sex. The picture shows father and Ulysses next to each other naked on the couch. Father's legs are open, displaying his penis. Ulysses's hand is on father's abdomen about two inches above father's pubic hair.

**Photograph 9**. This picture shows Ulysses standing naked with one arm reaching up in a pose reminiscent of a statue.

**Photograph 12**. Mother took this picture of father lying in the background naked on the bed with a semi-turgid penis. His hand reaches off-camera toward Lorelei, who is in the very near foreground peering into the camera lens.

In addition to the three photographs in which the children appeared, father took on the same roll of film three photographs of mother posing for him in her panties. In two of those pictures, father's penis appeared within the photograph, too. Mother and father admitted they took pictures of mother as foreplay for their sexual arousal.

Father and children contend the photographs of the children do not focus on the children's genitals and therefore were not intended to elicit a sexual response in someone who might see the pictures. The court found differently, however, and substantial evidence supports its conclusion. Ulysses's genitals are not masked in photographs 9 and 10; they are on full display in his fully undressed state. (See *Kongs, supra,* 30 Cal.App.4th at p. 1756 ["exhibition of genitals proscribed by statute 'means a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer.' "].) The photographs—particularly photographs 10 and 12 in which father appears nude, respectively, with Ulysses and Lorelei—are not stereotypical family photographs of a young child, say, frolicking in the bathtub, which one might take as a family keepsake. The court was instead entitled to conclude parents took the pictures to arouse themselves or others. The court's conclusion is particularly reasonable because the pictures of the children are on the same roll of film as pictures of panty-clad mother and semi-aroused father, which parents admitted taking for their sexual content.

Appellants contend the photographs warrant court jurisdiction only if they show *"obscene* sexual conduct." In support of their contention, they cite references to "obscene" conduct in the statute outlawing child pornography. (See § 11165.1, subd. (c).) Pointing to First Amendment principles that use a community standard for defining obscenity as appealing to a prurient interest, appellants assert the photographs are not obscene because they show only nudity, which, by itself, does not appeal to a prurient interest.

■ The Legislature added the phrases "obscene acts" and "obscene sexual conduct" to then section 11165 (now section 11165.1) in 1982. (Compare Stats. 1981 ch. 29, § 1, p. 67 & ch. 435, § 1, p. 1669 with Stats. 1982, ch. 905, § 1, p. 3337.) The statute's legislative history does not discuss why the statute facially limited its reach to "obscene" child pornography.

One possible explanation, however, is that as of 1982 no California court had decided whether First Amendment obscenity principles applied to child pornography. Perhaps in an abundance of caution (although given the silent legislative history, we admit this is only our educated guess), the Legislature required that the acts or conduct be obscene in order to ensure the statute would survive a First Amendment challenge. If so, the Legislature's caution turned out to be unnecessary because several years later *People v. Cantrell* (1992) 7 Cal.App.4th 523 [9 Cal.Rptr.2d 188], established that adult obscenity standards do not apply to children. The *Cantrell* court explained, "The courts of California and other states have generally accorded such material [involving children] less First Amendment protection than is given adult pornography. In *New York v. Ferber* (1982) 458 U.S. 747 [73 L.Ed.2d 1113, 102 S.Ct. 3348], the benchmark case in this area, the United States Supreme Court upheld a New York statute prohibiting persons from knowingly promoting a sexual performance by a child under the age of 16 by distributing material · depicting such a performance, regardless of whether or not the material is obscene. The court held that 'child pornography' involving something less than 'obscenity' is not presumptively protected by the First Amendment. It said for a number of reasons including a state's 'compelling' interest in safeguarding the physical and psychological well-being of a minor, 'the States are entitled to greater leeway in the regulation of pornographic depictions of children.' " (*Id.* at p. 541; *New York v. Ferber* (1982) 458 U.S. 747 [73 L.Ed.2d 1113, 102 S.Ct. 3348] [same]; see also *In re Duncan* (1987) 189 Cal.App.3d 1348 [234 Cal.Rptr. 877].)

■ After *Cantrell* was decided, the Legislature amended the statutory definition of obscenity to expressly approve the decision. (See Pen. Code, § 311, subd. (h).) The Legislature apparently did not, however, comb through the rest of the Penal Code to remove any lingering, but now inapt, references to "obscene" acts or sexual conduct involving children. The Legislature's intent was nevertheless clear: child pornography need not be obscene to be illegal. We therefore hold section 11165.1's reference to "obscene" acts or conduct is surplusage from a bygone era, which we may safely disregard. Consequently, the photographs' depictions of the children engaged in "sexual conduct" as defined in Penal Code section 311.4, subdivision (d)(1)— regardless of whether or not the photographs were obscene—justified the court's exercise of jurisdiction.[2]

2.–4.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[2] We respectfully suggest that, in the interest of clarity, the Legislature consider amending section 11165.1 to delete the word "obscene" as a modifier of "acts" and "sexual conduct."

[*] See footnote, *ante*, page 1092.

## DISPOSITION

The count alleging violation of Welfare and Institutions Code 300 subdivision (b) is dismissed. As modified, the judgment is otherwise affirmed.

Cooper, P. J., and Flier, J., concurred.

A petition for a rehearing was denied September 8, 2004, and the opinion was modified to read as printed above.