Filed 3/18/16  P. v. Gutierrez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062209 |
| v. | (Super.Ct.No. INF1300505) |
| LUIS ANGEL GUTIERREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Rafael A. Arreola, Judge. (Retired judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed with directions.

Alan S. Yockelson for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant Luis Angel Gutierrez of one count of unlawful sexual intercourse with a person 10 years of age or younger (Pen. Code[1] § 288.7, subd. (a); count 1), two counts of committing a lewd and lascivious act upon a child under the age of 14 years (§ 288, subd. (a); counts 2 and 3), and two counts of misdemeanor child molestation (§ 647.6, subd. (a); counts 4 and 5). Defendant (born in 1947) was charged with and convicted of offenses against two minor victims, sisters referred to in our record as Jane Doe (born in 2001; counts 1, 2, and 3) and Mary Doe (born in 1998; counts 4 and 5). The trial court imposed an indeterminate sentence of 25 years to life in state prison with respect to count 1, as well as an aggregate determinate sentence of eight years on the remaining counts, to be served concurrently.

On appeal, defendant raises five claims of error, arguing that: (1) the trial court abused its discretion by admitting evidence of four uncharged sexual offenses against Mary Doe; (2) the evidence in support of one of defendant's convictions under section 647.6 was insufficient; (3) the court gave the jury conflicting instructions with respect to the motive element of the section 647.6 offenses; (4) the evidence in support of defendant's conviction under section 288.7, subdivision (a), was insufficient; and (5) the abstract of judgment and the minute order of the sentencing hearing do not accurately reflect the trial court's oral pronouncement of sentence. The People concede that the abstract of judgment and minute order should be corrected, and we agree. We affirm the judgment in all other respects.

---

[1] Further undesignated statutory references are to the Penal Code.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant was a long-time friend of the family of the two victims. Jane Doe testified at trial that on a morning in 2011, when she was nine years old, she was left alone in the family home with defendant, who had spent the night there. She was sleeping in her sister's bedroom when defendant entered the room shirtless, took off his shorts, and lay down next to her. He took off her shorts, and put his arms around her. He pulled her underwear down by the waistband, and she felt "his private part . . . [o]n [her] private part." She saw him hold his "private part" with his hand "towards [her]," and felt it moving and rubbing against her "private part" skin to skin. She specified that by "private part" she meant the part of the body that "pee" comes from. She felt "pressure" from the rubbing, but when asked by defense counsel to clarify that defendant never "stuck his private part inside [her] private part," she responded: "Just on the top." She agreed that the rubbing was "[j]ust around on the outside." When asked whether she "could feel his private part up against the area on [hers] where the pee comes from," she responded "No." When asked whether the rubbing was "inside or outside of that," she answered: "It was outside." Defendant eventually ejaculated, after which Jane Doe "ran to the restroom and locked it."

Jane Doe also testified at trial that, in approximately the same time frame—at trial, she could not remember whether it was a separate incident—defendant had held her down and licked one of her breasts.

In addition to Jane Doe's trial testimony, the jury also heard an audio recording, made by her parents, of her initial disclosure of the abuse to them. On the recording, Jane

3

Doe responds in the affirmative when her father asked her (in Spanish) "did he put something in your private area?" Later in the recording, Jane Doe says "He put something in my private parts."

A nurse forensic examiner testified as an expert witness on behalf of the prosecution. In response to a hypothetical question, she opined that a child who described rubbing and a feeling of pressure against "the hole where the pee comes from" would likely be referring to the opening of the vagina, an area that is "past the external genitalia," that is, beyond the labia majora.[2] She also discussed a form of conduct, described by analogy to a hot dog in a bun, where there is sexual contact beyond the labia majora, but without penetration into the vagina.

After Jane Doe disclosed the abuse to her parents, Mary Doe disclosed that defendant had also touched her inappropriately several times. She testified at trial that one such incident occurred when she was in the sixth grade. She was getting into the passenger seat of a car, while defendant was sitting in the driver's seat. As she did so, he "put his hand on [her] upper thigh close to [her] private area." Defendant's fingers were "close to being in between [her] legs." She felt "very uncomfortable," but did not say anything. She estimated that defendant moved his hand away after less than 10 minutes: as Mary Doe described it at trial, eventually "he looks down, and I looked down, and that's when he moved his hand."

---

[2] "The external female genitalia are referred to as the 'vulva' and '"include the labia majora, labia minora, clitoris, and vestibule of the vagina."'" (*People v. Quintana* (2001) 89 Cal.App.4th 1362, 1371.)

On another occasion, when Mary Doe was about 13 years old, defendant and his wife came to the victims' family's house to play a game. Mary Doe was not interested in playing, and went to her parents' bedroom to lie down. A few minutes later, defendant came into the room and, after a conversation, Mary Doe reluctantly agreed to come out to play. As she attempted to leave the room, defendant blocked the doorway, and as she tried to push past him, he kissed her on the mouth. Mary Doe testified that the kiss involved only lips, no tongue, but it "was something [defendant] shouldn't have done. It was not a greeting kiss." When defendant stopped, Mary Doe went past him, and sat down at the table where the families were playing the game. But shortly thereafter, she went to the bathroom to cry, and to clean her mouth.

In addition to the charged offenses, described above, Mary Doe testified regarding four uncharged sexual offenses by defendant. On one occasion, at defendant's house, the then 12-year-old Mary Doe asked defendant why he took so many medications, after observing him take some pills. Defendant responded by taking her into the master bedroom, having her close the door, and then lowering his pants past his groin— purportedly to show her a scar, but in the process exposing his penis to her.

Mary Doe also testified regarding another incident, when she was between 11 and 13 years old, when she was riding in defendant's car, and told him that she could not wait until she could drive. Defendant told her that he could show her how to drive. He pulled the car over, and sat her on his lap in the driver's seat; he continued to control the car with his legs, and they both had their hands on the steering wheel. When they travelled over a speed bump, Mary Doe was discomforted by the way defendant pushed up into

5

her. Also, before arriving back home, defendant stopped the car, and lifted her off his lap and onto the passenger seat. Instead of lifting her, for example, with his hands under her arms, he did so initially with his hands around her rib cage; he then "slid his hands up to [her] breasts," and lifted her to the passenger seat with his fingers covering her breast area.

On another occasion, the victims' family and defendant's family had travelled together to Las Vegas, and were staying in adjoining hotel rooms. Mary Doe was sleeping on a pullout couch with her sisters, and woke up at about 3:00 a.m. to find defendant sitting at a table watching them sleep. A few hours later, defendant woke Mary Doe up, asking if she wanted to watch a World Cup soccer game that was on television with him. She agreed. Mary Doe was wearing a tank top, and as her attention was on the game, she felt defendant kiss her bare shoulder—more than just a "peck on someone's shoulder," because she felt wetness and saliva.

The fourth uncharged incident occurred at defendant's house. Mary Doe walked past defendant, who was sitting on a couch; as she did so, he slapped her on the bottom.

Defendant's trial was held over two days in August 2014. The jury returned its verdict, finding defendant guilty on all five charged counts, on August 18, 2014. The trial court sentenced defendant on September 22, 2014. It imposed the mandatory indeterminate sentence of 25 years to life with respect to count 1. It also imposed a six-year prison term for count 2 and two years for count 3, with the sentence for count 3 to be served consecutive to count 2. Both of these determinate sentences, however, were

6

ordered to run concurrent to the indeterminate sentence for count 1. The court also imposed 365-day sentences for both count 4 and count 5, both to run concurrently.

## II. DISCUSSION

### A. The Evidence of Uncharged Sexual Offenses Was Properly Admitted.

Defendant contends that the trial court abused its discretion by admitting Mary Doe's testimony regarding the four uncharged sexual offenses, arguing that "the acts she testified to were not objectively offensive and the prosecution presented no evidence that the acts were sexually motivated . . . ." We find no abuse of discretion.

Character or disposition evidence is generally inadmissible to prove a defendant's conduct on a specified occasion. (Evid. Code, § 1101, subds. (a), (b).) Evidence Code section 1108 creates an exception: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1108, subd. (a).) To be admissible pursuant to Evidence Code section 1108, the uncharged misconduct must constitute one of the sexual offenses enumerated in Evidence Code section 1108, subdivision (d)(1). "The trial court must make a preliminary determination of whether the proffered evidence is sufficient for the jury to find, by a preponderance of the evidence, that the defendant committed an enumerated offense." (*People v. Jandres* (2014) 226 Cal.App.4th 340, 353.)

As relevant here, annoying or molesting a child under Penal Code section 647.6 is one of the offenses specified in Evidence Code section 1108. (Evid. Code, § 1108, subd.

7

(d)(1)(A).)  A violation of Penal Code section 647.6, subdivision (a) requires proof of the following elements:  "(1) the existence of objectively and unhesitatingly irritating or annoying conduct; (2) motivated by an abnormal sexual interest in children in general or a specific child; (3) the conduct is directed at a child or children, though no specific child or children need be the target of the offense; and (4) a child or children are victims."  (*People v. Phillips* (2010) 188 Cal.App.4th 1383, 1396, fn. omitted.)  Penal Code section 647.6 is not limited to explicit lewd acts.  (*People v. Thompson* (1988) 206 Cal.App.3d 459, 464-466.)  Convictions under Penal Code section 647.6 have been upheld even when the defendant's conduct was outwardly "ambiguous" but still evidenced the requisite motive.  (*People v. Kongs* (1994) 30 Cal.App.4th 1741, 1750 (*Kongs*).)

The trial court has broad discretion in ruling on the admissibility of evidence under Evidence Code section 1108, and we review the trial court's ruling for abuse of discretion.  (*People v. Wesson* (2006) 138 Cal.App.4th 959, 969.)  In other words, we determine whether, viewing the evidence in the light most favorable to the trial court's ruling, the trial court's ruling nevertheless fell outside the bounds of reason.  (*Ibid.*; see *People v. Carter* (2005) 36 Cal.4th 1114, 1148.)  For the reasons discussed below, it did not.

Perhaps, as defendant argues, each of the individual uncharged acts at issue, taken in isolation, might be viewed as accidental or otherwise innocent, and therefore not a violation of section 647.6.  But that is hardly the only reasonable interpretation of the evidence, particularly when considered cumulatively.  (See *People v. Moore* (1986) 185 Cal.App.3d 1005, 1016 [discussing "conduct that might in a single instance be accidental

8

and unintentional and insufficient to violate [the precursor statute to section 647.6], but the cumulative effect of which was clearly violative . . . ."].)  Viewed in the light most favorable to the trial court's ruling, the evidence supports the interpretation that defendant did not just open his clothing to show Mary Doe his scar, and accidentally reveal more than intended; instead, he took her to a bedroom alone, had her close the door behind them, and lowered his pants below the groin area, intentionally exposing his genitals (and perhaps also a scar).  Defendant did not just touch Mary Doe's breasts accidentally or incidentally; he used the pretext of moving her to the passenger seat as an opportunity to touch her breasts, lifting her with his fingers in that area, rather than under her arms or keeping his hands around her waist or rib cage, or simply opening the car door and letting her walk around to the other side of the car.  Defendant did not just give Mary Doe a peck on the shoulder; he roused her from bed, and while her attention was distracted gave her a kiss that was too "wet" to be an innocent gesture of affection from a family friend.  Defendant did not just give Mary Doe a swat on the buttocks; he engaged in a series of actions that were sometimes ambiguously, but sometimes overtly sexual, of which this touching was only the latest instance.  Defendant's conduct was objectively irritating and annoying in the meaning of section 647.6, perhaps when each incident is considered individually, but certainly when viewed in light of the entire course of conduct described by Mary Doe at trial.

The trial court also reasonably determined that the uncharged conduct at issue was motivated by sexual interest in Mary Doe.  To be sure, as defendant notes, the prosecution introduced no evidence of defendant confessing sexual desire toward

9

children, or toward Mary Doe in particular. Nevertheless, defendant's actions—viewed in the light most favorable to the trial court's ruling, as opposed to the more innocent light defendant would prefer—speak for themselves. Even setting aside the charged conduct, there is substantial evidence that defendant exposed his genitals to Mary Doe, touched her on the breasts and buttocks, and kissed her in a manner that left her shoulder wet with saliva. At best, the uncharged conduct was ambiguous in nature, and the trial court was well within its discretion to find it more likely than not sexually motivated. (*Kongs*, *supra*, 30 Cal.App.4th at p. 1750.) No additional evidence of sexual intent was required to admit the uncharged acts pursuant to Evidence Code section 1108.[3]

## B. Substantial Evidence Supports the Section 647.6 Convictions.

Defendant contends that the evidence in support of one of his two section 647.6 convictions is insufficient. Making similar arguments to those discussed above with respect to uncharged sexual offenses, he contends that placing his hand on Mary Doe's leg would not "unhesitatingly irritate or disturb a normal person," (*People v. Lopez* (1998) 19 Cal.4th 282, 290 (*Lopez*)) and that there is no evidence that his doing so was sexually motivated. We again reject these arguments.

When a criminal defendant contends the evidence was insufficient to support his conviction, "'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the

---

[3] Because we find no error, we need not address the parties' arguments regarding whether any error was prejudicial.

10

defendant guilty beyond a reasonable doubt. [Citations.] . . . The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].""" (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508 (*Cravens*).) Put another way: "In reviewing the sufficiency of the evidence [to support a factual finding], the '"power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the [trier of fact's] findings.' . . . 'If the circumstances reasonably justify the [trier of fact's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. . . ." (*People v. Baker* (2005) 126 Cal.App.4th 463, 468-469.)

There are certainly contexts in which a normal person would not ""'unhesitatingly be irritated"'" by an adult touching the thigh of a child. (*Lopez*, *supra*, 19 Cal.4th at p. 289.) The circumstances of the present case (viewing the evidence in the light most favorable to the trial court's ruling) are not among them. As Mary Doe, a child in the sixth grade, sat in the passenger seat of a car, defendant, a friend of her family more than 50 years older than her who was sitting in the driver's seat, "put his hand on [her] upper thigh close to [her] private area," with his fingers "close to being in between [her] legs," and held it there for an extended period of time—something less than 10 minutes. Applying their instructions, the jury found this conduct such that a normal person, without hesitation, would have been disturbed, irritated, offended, or injured by it. We do not disagree with the jury's determination.

11

Substantial evidence also supports a finding that defendant's touching of Mary Doe's thigh was sexually motivated. The jury could reasonably infer sexual motivation from the circumstances and defendant's conduct, even if the touching of a child's thigh is not necessarily, in all contexts, an overtly sexual act. Additionally, defendant has not contested the sufficiency of the evidence with respect to his other Penal Code section 647.6 conviction, for kissing Mary Doe. Defendant's overtly sexual act with respect to the same child on another occasion, as well as the uncharged sexual acts against Mary Doe admitted as propensity evidence pursuant to Evidence Code section 1108, and the charged offenses committed against Jane Doe, all constitute evidence tending to support the jury's conclusion that defendant also acted with a sexual motive on the occasion when he touched Mary Doe's thigh.

In short, both of defendant's convictions under section 647.6 were supported by substantial evidence.

## C. Defendant Fails to Demonstrate Any Prejudicial Instructional Error.

The trial court properly instructed the jury, using CALCRIM No. 1122, that to convict defendant of violating section 647.6, it would have to find that "defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child." But the court also instructed the jury with CALCRIM No. 370, which states that "The People are not required to prove that the defendant had a motive to commit any of the crimes charged." Relying principally on *People v. Maurer* (1995) 32 Cal.App.4th 1121 (*Maurer*), defendant argues that these conflicting instructions were erroneous, and amounted to prejudicial error with respect to count 4 (based on defendant's touching of

12

Mary Doe's thigh), while conceding it to be harmless with respect to count 5 (based on the incident when defendant kissed Mary Doe). We agree that the trial court erred, but find the error harmless with respect to both of defendant's section 647.6 convictions.

"'In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys. The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights.' [Citation.] We determine the correctness of the jury instructions from the entire charge of the court, not from considering only parts of an instruction or one particular instruction. [Citation.] The absence of an essential element from one instruction may be cured by another instruction or the instructions taken as a whole. [Citation.] Further, in examining the entire charge we assume that jurors are "'"'"intelligent persons and capable of understanding and correlating all jury instructions which are given." [Citation.]'" [Citations.]'" (*People v. Smith* (2008) 168 Cal.App.4th 7, 13.) The "beyond a reasonable doubt" standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24, applies to our determination of whether any error was prejudicial. (*Maurer*, *supra*, 32 Cal.App.4th at p. 1128.) On this standard, the inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279 (*Sullivan*); see also *People v. Flood* (1998) 18 Cal.4th 470, 515 (*Flood*).)

Before turning to the merits of defendant's claim of error, we note the People's contention that defendant forfeited the claim. However, under section 1259, we must

13

consider challenges to instructions "even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (See *People v. Stitely* (2005) 35 Cal.4th 514, 556, fn. 20.) We will therefore consider the issue on the merits.

"There is no doubt that in proving the mental state element of the section 647.6 offense, the prosecution must show that the acts or conduct 'were motivated by an unnatural or abnormal sexual interest.'" (*Maurer*, *supra*, 32 Cal.App.4th at p. 1127.) And it is "generally true that motive is not an element of a criminal offense" (*id.* at p. 1126), so CALCRIM No. 370 is generally a correct statement of the law. But the form instruction's language does not account for the unusual circumstance that section 647.6 has been interpreted to require proof of the defendant's sexual motivation. (See *Maurer*, *supra*, at p. 1126 [referring to section 647.6 as a "strange beast"]; see also Bench Notes to CALCRIM No. 370 ["**Do not** give this instruction if motive is an element of the crime charged. (See, e.g., CALCRIM No. 1122, *Annoying or Molesting a Child*.)" (Original bolding and italics.)].) As a result, with respect to the section 647.6 counts, the jury was instructed both that the prosecution must prove motive, and that the prosecution need not prove motive. To give such irreconcilably contradictory instructions to the jury was erroneous. (*Maurer*, *supra*, at p. 1127.)

In arguing otherwise, the People point to other instructions given to the jury, including the requirement that it find all elements of each offense beyond a reasonable doubt, and that the People must prove not only the acts charged, but also that defendant acted with the requisite wrongful intent. If anything, however, these instructions further

14

muddy the waters. How could a nonattorney juror find there to be any reasonable doubt regarding an element that he or she has been instructed that the People need not prove? Furthermore, the intent instruction given to the jury (correctly) instructed that counts 2 and 3 were specific intent crimes, while the other counts, including the section 647.6 charges of counts 4 and 5, required only proof that defendant "intentionally [did] a prohibited act." Motive and intent are separate and distinct concepts—though the People's arguments on appeal muddle that point. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 503-504.) But it is reasonably likely that a nonattorney juror, also instructed that the People need not prove motive, would read the intent instruction as further indication that the only mental state the People needed to prove with respect to counts 4 and 5 is that defendant committed the prohibited acts intentionally.

Nevertheless, despite the erroneous instructions on the motive element of the section 647.6 offenses, the error was harmless beyond a reasonable doubt in the context of defendant's trial. Again, we agree with defendant that touching a child on the thigh is not necessarily a sexually motivated act. Nevertheless, it beggars belief that a jury that convicted defendant of committing an unambiguously sexual act against the same child— "a non-consensual kiss on the mouth while blocking exit from a room," as defendant describes it in his briefing on appeal—and also found him guilty of engaging in sexual intercourse and other lewd conduct with her younger sister, might nevertheless have concluded the touching of Mary Doe's thigh, the circumstances of which we have already discussed above, was not also sexually motivated. Defendant's arguments to the contrary depend on looking at the act at issue in isolation, out of the context of all the evidence

15

presented at trial. That is not the correct analysis. (*Sullivan*, *supra*, 508 U.S. at p. 279; *Flood*, *supra*, 18 Cal.4th at p. 515.) Defendant has therefore failed to demonstrate any prejudice arising from the erroneous jury instructions.

**D. Substantial Evidence Supports the Section 288.7 Conviction.**

Defendant challenges the sufficiency of the evidence in support of his section 288.7 conviction, arguing that there is no substantial evidence that defendant sexually penetrated Jane Doe. We find the evidence to be sufficient to support the conviction.

Section 288.7 punishes "sexual intercourse . . . with a child who is 10 years of age or younger . . . ." (§ 288.7. subd. (a).) "Sexual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis." (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79.)

The evidence regarding sexual penetration is fairly described as ambiguous. Jane Doe did not testify about what was done to her in anatomical terms, either because she was not capable of doing so, or because counsel for both the People and the defense shied away from questioning her in that manner. On the recording, played for the jury, of her disclosure of the abuse to her parents, Jane Doe says, "He put something in my private parts." But at trial, Jane Doe phrased her testimony slightly differently; she said he "put his private part on mine." She observed defendant holding his penis "towards [her]," and described his private part as moving "against [hers]." On cross examination, defense counsel asked, "But he never stuck his private part inside your private part; right?" Jane Doe answered "Just on the top." Defense counsel attempted to clarify: "Just around on the outside?" and Jane Doe responded "Yes." Defendant, not unreasonably, interprets

16

Jane Doe's trial testimony to mean that defendant's penis did not penetrate Jane Doe's genitalia, which would mean his conviction for violation of section 288.7 should be reduced to a lesser included offense. He also makes a reasonable argument that the prosecution's expert witness added little to the prosecution's case, pointing out that she never examined Jane Doe, and the hypothetical questions she was asked were not tailored precisely to Jane Doe's testimony.

Defendant's interpretation of the evidence, however, and of Jane Doe's testimony in particular, is not the only reasonable interpretation and, as noted, we are bound to view the evidence in the light most favorable to the judgment. (*Cravens*, *supra*, 53 Cal.4th at pp. 507-508.) On at least one occasion, Jane Doe stated that defendant "put something in my private parts." When she described at trial the contact between her genitals and defendant's as "[j]ust on the top," and agreed with defense counsel's characterization of "around on the outside," Jane Doe could have meant to indicate penetration past the labia majora, but not further into the vagina. Defendant notes that Jane Doe's testimony was less articulate and less explicit than that of the victim in *People v. Karsai* (1982) 131 Cal.App.3d 224, 232-233. But this difference is attributable to Jane Doe's relatively younger age (the victim in *Karsai* was 16 at the time she was raped), and the questions Jane Doe was asked, and does not require the conclusion that the evidence in support of defendant's conviction was insufficient. The jury reasonably resolved the ambiguities in Jane Doe's testimony as it did, understanding her to indicate that he did sexually penetrate her at least to some slight extent. As such, substantial evidence supports defendant's conviction pursuant to section 288.7.

**E. The Abstract of Judgment and Minute Order Regarding Sentencing Should Be Modified.**

Defendant contends the abstract of judgment and minute order regarding the September 22, 2014 sentencing hearing do not accurately reflect the trial court's oral pronouncement of judgment. Specifically, the trial court ordered that the sentence on count 3 be served consecutive to the sentence on count 2, but (like the sentence on count 2) concurrent to the indeterminate sentence on count 1. The abstract of judgment and minute order both indicate that the sentence on count 3 is to be served consecutive to the sentence on count 1. The People agree, as do we, that the abstract of judgment and minute order should be corrected.

"Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) We have the inherent power to correct clerical errors so as to make records such as abstracts of judgment or minute orders conform to the trial court's oral pronouncement. (*In re Candelario* (1970) 3 Cal.3d 702, 705.) Accordingly, the abstract of judgment and minute order should be modified to reflect that the sentence on count 3 is to be served concurrent to the indeterminate sentence on count 1.

III. DISPOSITION

The clerk of the superior court is ordered to amend the September 22, 2014 minute order and the abstract of judgment to reflect that the sentence on count 3 is to be served concurrent to the sentence on count 1. The superior court clerk shall prepare an amended

18

minute order and abstract of judgment, and forward a copy of each to the Department of

Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

19