Filed 3/2/21  P. v. Snyder CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090553 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE019795) |
| v. | |
| DAVID ERIC SNYDER, | |
| Defendant and Appellant. | |

On a three-count information, a jury convicted defendant David Eric Snyder of two counts of lewd and lascivious conduct with a child under the age of 14 (Pen. Code, § 288, subd. (a)).[1]  The jury deadlocked on the third count, alleging attempted possession of child pornography (§§ 664, 311.11, subd. (a)), and that count was dismissed.  The court sentenced defendant to a total prison term of eight years.

---

[1]  Undesignated statutory references are to the Penal Code.

1

On appeal, defendant argues that the trial court prejudicially abused its discretion by admitting evidence of other, uncharged sex offenses against young children occurring years before the charged offenses. Defendant also contends the evidence is insufficient to support his conviction on the second count of lewd and lascivious conduct. We will affirm.

BACKGROUND FACTS AND PROCEDURE

*Prosecution case*

S.D., the victim, is defendant's daughter.[2] She was born in 2005 and was 13 years old at the time of trial. Her mother and defendant were married in 2001 and divorced in 2017. S.D. lived with her mother and visited defendant every other weekend.

On Saturday, August 11, 2018, when S.D. was 12 years old, she spent the day with defendant at Folsom Lake. At the end of the day, S.D. and her older brother returned to defendant's house, while S.D.'s younger sister went to a friend's house to spend the night. After they arrived at defendant's house, defendant told S.D. to take a shower. She entered the bathroom, removed her clothes, and showered.

After her shower, as she was getting dressed, S.D. noticed defendant's phone swaddled in a bundle of clothes. Most of the phone was covered, but the camera lens was exposed and facing towards the shower. S.D. picked up the phone and discovered that it had been recording her. She accessed two videos on the phone and replayed the most recent one, which showed her undressing and getting into the shower. In another video, she recognized defendant's legs and swim trunks as she saw the phone being placed into the pile of clothes.

---

[2] To protect their privacy, we refer to the victim, the victim's family members, and other witnesses using first names or initials which do not necessarily correlate to their real names. (Cal. Rules of Court, rule 8.90(b)(4).)

Confused and upset, S.D. deleted the videos, replaced the phone, finished getting dressed, and went to the kitchen where she sent a text to her mother. Her text read, "I just took a shower at [dad's] and he put his phone in clothes in there and it was recording me." S.D.'s mother called and S.D., crying, told her mother she wanted to come home. S.D.'s mother then sent a text to defendant telling him that he had 15 minutes to bring the children to her or she would call the sheriff's department. Defendant agreed, without asking why. S.D.'s mother called the sheriff's department while waiting for defendant.

Before arriving back at home, S.D. confronted defendant about the recording. According to S.D., defendant said he was sorry, asked whether S.D.'s mother had called the police, and told S.D. he did not want to go to jail. Defendant stopped to pick up S.D.'s younger sister on the way to meet mother at their mutually agreed upon location. While S.D. was sitting alone in the car with her brother, he asked why she was crying, and she told him that a phone recorded her in the shower.

Upon returning home, S.D. told her godmother what happened. Later that evening, Deputy Sheriff Casey Pitto interviewed S.D. S.D. gave him an account of the incident consistent with what she had told her mother and godmother. During the interview, Deputy Pitto asked S.D. if anything like this had happened to her before. S.D. told the officer that defendant previously had molested her when she was about 10 years old and in the fourth grade.

S.D. described the prior molestation at trial. She testified that when her mother was at work, defendant called her into her parents' bedroom, told her to get undressed, lifted her over his shoulder, and put his fingers inside her vagina. She testified that she hit and kicked defendant and told him to stop, but he did not. Eventually, defendant put her down and told her to get her clothes and go to bed. Upset and confused, she went to her room and cried. This happened late on a Friday night after defendant had finished playing poker with his friends in his garage and while S.D.'s mother was away at work.

3

S.D. also recalled a second molestation in her parents' bedroom during which defendant did "[t]he same thing that happened the first time." Although unable to remember specific dates, S.D. recalled defendant putting his fingers inside her vagina "[a]t least four times."

S.D. further testified that on at least two other occasions, also when she was approximately 10 years old and in the fourth grade, defendant showered with her. He "scrub[bed] [her] body" with a loofah and touched her body with his hands. He washed her legs, back, and buttocks. She told defendant to stop, but he did not listen.

S.D. never told her mother or anyone else in her family about the molestations because she was scared, worried about splitting up her family, and afraid that defendant might hurt her, one of her siblings, or her mom.[3] However, S.D. testified that when she was in the fourth grade, she told her friend, K.M., about the molestations. K.M., age 14 at trial, confirmed that several years earlier, S.D. said defendant had done "something bad" to her,[4] but K.M. never told anyone.

S.D.'s mother and defendant's ex-wife (mother) testified that in or about 2013, while they were married, defendant recorded them having sex without her knowledge or consent. Defendant filmed them using a camera positioned on his desk and aimed at the bed. The camera had a red light on the front that illuminated when it was recording, but defendant had placed a piece of black tape over the light.

After defendant was arrested, investigators recovered from defendant's bedroom two videos of defendant and mother having sex. One of the videos appeared to have been recorded around 2010 or 2011. There is nothing in the videos to indicate that mother

---

[3]    There had been times in the past where S.D. had seen defendant use physical force with other family members.

[4]    Although K.M. was not sure, she believed this conversation happened when she was in the fourth grade and S.D. was in the third grade.

4

knew she was being recorded. Mother testified that she never consented to being recorded having sex with defendant.

E.S. is defendant's sister. She is approximately five years younger than defendant. E.S. testified about uncharged sexual conduct by defendant when E.S. was between approximately 12 and 15 years old. E.S. testified that when she was about 12 or 13 years old, and defendant was about 17 or 18 years old, defendant would make unsolicited sexual comments about her breasts and buttocks. Defendant also would ask to date her friends. According to E.S., defendant dated a friend of hers who was in junior high school. E.S. saw them kiss and touch each other, and defendant told E.S. they had sex.

E.S. testified that when she sunbathed, defendant would rub suntan lotion onto her body in a sexually suggestive manner. He would focus on areas like her buttocks and legs and linger "longer than necessary."[5] Sometimes defendant would push down on E.S.'s swimsuit, exposing more of her buttocks, to the point that she had to tell him to stop. Other times, he would sit on her back and she could feel him become aroused. Defendant's actions made her uncomfortable enough that she stopped sunbathing.

E.S. testified that when she was about 14 years old, defendant asked to have anal sex with her. At first, E.S. did not take it seriously, but because he was "very direct" and asked her several times, she realized "he wasn't joking." He assured her it "wouldn't hurt" and "wouldn't be a problem."

E.S. claimed she told her mother about defendant's inappropriate behavior, but her mother downplayed it and called her a liar. In part because of her brother's actions, when E.S. was 15 years old, she left and went to live in a foster home.

---

[5] A detective testified that during her interview, E.S. did not say defendant touched her buttocks or legs, only that he rubbed lotion on her back.

R.K. is mother's sister. She is about seven years younger than mother. R.K. testified that when she was between approximately 12 and 15 years old, she often would stay overnight with defendant and mother.

After defendant was arrested, investigators recovered a photograph of R.K. from defendant's computer. The photograph depicts R.K., seemingly asleep on the floor, wearing only a pink bra and thong underwear, with her pants around her ankles.[6] A forensic computer analyst testified that the image of R.K. was recovered from the recycle bin for a "deleted user account" in the name of S.D.'s mother. The image showed that it was created on August 12, 2014, but that likely was the date the image was moved to the recycle bin.

R.K. testified that she thought the photograph probably was taken when she was in eighth grade. R.K. testified she used defendant's computer to upload photographs from her camera, but claimed she had never seen this particular photograph before and did not know how it came to reside on defendant's computer.

S.D.'s mother denied taking the photograph or having seen it before. She could not identify where the photograph was taken. She testified that defendant was much more technologically savvy than she. She testified that defendant set up the user accounts on the family's computer and gave her the password to her account, which she never changed.

*Defense case*

Testifying in his own defense, defendant claimed to have a good relationship with his children. However, defendant claimed that since his divorce he had been spending more time with his youngest daughter, and he felt the other children, including S.D., were resentful of this.

---

[6] None of the witnesses at trial described the photo on the record, but both parties agree what it depicts.

Defendant denied recording S.D. in the bathroom. Defendant admitted that he saw S.D. crying on the day of the incident, but claimed he never asked her about it. When mother threatened to call the sheriff, defendant did not ask why because he was not "playing any more games with her"; he was just "following her orders." Defendant claimed he did not find out about S.D.'s accusations against him until two months later.

Defendant denied ever inserting his fingers into S.D.'s vagina, and denied getting in the shower with S.D. after she reached the age of about four or five.

Defendant admitted that he videotaped mother and himself having sex. Defendant testified that he would ask mother's consent to record them having sex, but did not recall if he asked her every time. He claimed that they made approximately five sex videos and watched them together.

Defendant admitted that he had technical training, that he built the computer on which the photograph of R.K. was found, and that he had administrator access for that computer, but denied creating the password for mother's account. Defendant testified that he did not take the photograph of R.K., that he had never seen the photograph, and that he never uploaded it to the family's computer. He testified that R.K. regularly uploaded photographs and videos from her camera to the computer with mother's help.

Defendant admitted rubbing suntan lotion on E.S.'s back when he was about 15 or 16 and she was 11 or 12, but he denied groping E.S. or rubbing suntan lotion on her in a sexually suggestive way. He did not recall if he made sexually suggestive comments to her. He denied propositioning E.S. for sex. He denied dating or having sex with E.S.'s junior high school friend.

Defendant's mother testified that she did not recall E.S. telling her that defendant had made sexual advances or inappropriate sexual comments.

*Rebuttal case*

On rebuttal, Detective Melinda Gobron testified that investigators had been unable to search defendant's phone because it was password protected. Although defendant

7

provided a passcode for the phone during cross-examination, the password provided by defendant did not unlock the phone.

*Verdict and sentencing*

The jury found defendant guilty of two counts of committing a lewd and lascivious act on a child under the age of 14 (§ 288, subd. (a); counts one and two), but deadlocked on the third count, alleging attempted possession of matter depicting a minor engaged in sexual conduct (§§ 664, 311.11, subd. (a); count three). Count three subsequently was dismissed. The court sentenced defendant to an aggregate prison term of eight years.

DISCUSSION

I

*The Uncharged Sexual Offense(s) Involving E.S.*

Before trial, the prosecution filed a motion in limine to admit evidence of uncharged sexual offenses by defendant against his younger sister, E.S., under Evidence Code section 1108.[7] Specifically, the prosecution sought to admit evidence that more than 20 years earlier, when E.S. was between approximately 12 and 15 years old, defendant propositioned E.S. for sex, leered at her body, and rubbed suntan lotion on her in an inappropriate way. Defendant objected that the evidence should be excluded because it was irrelevant, remote, and unduly prejudicial. After conducting an Evidence Code section 352 analysis, the trial court granted the prosecution's in limine motion.

---

[7] The prosecution also sought to admit the evidence under Evidence Code section 1101, subdivision (b). Because the court admitted the evidence under Evidence Code section 1108, the prosecution withdrew the request to admit the evidence under Evidence Code section 1101, subdivision (b).

On appeal, defendant argues the trial court erred in allowing the prosecution to admit this propensity evidence under Evidence Code section 1108.**8** We disagree.

In sexual offense cases, Evidence Code section 1108 creates an exception to the general prohibition against admitting propensity evidence to prove a defendant's conduct on a specified occasion. (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1115; *People v. Villatoro* (2012) 54 Cal.4th 1152, 1159-1160 (*Villatoro*).) Under Evidence Code section 1108, when a criminal defendant is accused of a sexual offense, evidence that the defendant committed another sexual offense, charged or uncharged, is admissible for the purpose of showing the defendant's propensity to commit the current sex crime. (Evid. Code, § 1108, subd. (a); *Villatoro, supra*, at pp. 1160-1161.)

As our Supreme Court has explained, the legislative history indicates that the " 'principal justification for adopting [Evidence Code] section 1108 was a practical one: By their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. [Evidence Code] [s]ection 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes.' " (*Villatoro, supra*, 54 Cal.4th at p. 1160.) Thus, there is a "strong presumption in favor of admitting sexual assault evidence under Evidence Code section 1108 to show propensity to commit charged crimes." (*People v. Merriman* (2014) 60 Cal.4th 1, 62.) Such evidence is to be excluded only if it is inadmissible under Evidence Code section

---

**8**    We note that E.S.'s testimony at trial exceeded the scope of the in limine motions. For example, E.S. testified that defendant had sex with a friend of hers who was in junior high school. Because defendant never objected to that testimony below, he has forfeited consideration of the issue on appeal. (*In re D.D.* (2019) 32 Cal.App.5th 985, 992.)

9

352.  (*People v. Loy* (2011) 52 Cal.4th 46, 62; accord, *People v. Cordova* (2015) 62 Cal.4th 104, 132 (*Cordova*).)

Evidence Code section 352 gives a court the discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)  In considering whether the probative value of the evidence is outweighed by the prejudice, courts must evaluate such factors as:  (1) the probative value of the evidence (including the nature and relevance of the other offense, the degree of certainty of its commission, its similarity to the charged offense, and the amount of time that has passed); (2) the likelihood of confusing or distracting the jurors from their main inquiry; (3) whether admission of the evidence will require an undue consumption of time; and (4) whether the evidence is inflammatory and likely to prejudice the jury, as well as any other unique facts and issues presented by the case. (*People v. Nguyen, supra*, 184 Cal.App.4th at pp. 1116-1117; *People v. Falsetta* (1999) 21 Cal.4th 903, 916-917.)

Trial courts enjoy broad discretion in assessing whether the probative value of evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124; accord, *People v. Holford* (2012) 203 Cal.App.4th 155, 167 (*Holford*).)  A trial court's ruling is reviewed for abuse of discretion, and will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*Holford, supra*, at p. 168; *People v. Stewart* (1985) 171 Cal.App.3d 59, 65 [showing insufficient if it merely affords an opportunity for a difference of opinion].)

On appeal, defendant renews his argument that the uncharged acts evidence should have been excluded because it was dissimilar and remote, and created a substantial

danger of prejudice that outweighed any probative value.[9]  We conclude the trial court did not abuse its discretion by finding the propensity evidence admissible under Evidence Code section 1108.

We reject defendant's claim that the uncharged offenses bore no similarities to the charged offenses.  Both the charged and uncharged offenses involved an unnatural or abnormal sexual interest in young girls and utter disregard for the personal boundaries of female family members.  The evidence had probative value because it supported an inference that defendant had a propensity to commit sex crimes against young girls, generally, and young female family members, in particular, permitting an inference that defendant was likely to commit, and did commit, the charged offenses.  (See, e.g., *People v. Frazier* (2001) 89 Cal.App.4th 30, 41 [evidence that defendant sexually abused three young female relatives admissible to show propensity to commit sexual abuse against young female niece]; *People v. Hernandez* (2011) 200 Cal.App.4th 953, 966-967 [inappropriate touching of young females with close familial ties].)

While there are dissimilarities—e.g., defendant was much younger and the uncharged offense involved less offensive touching—the dissimilarities are not so great as to render the uncharged sexual offense(s) inadmissible.[10]  They go to the weight, not the admissibility, of the evidence.  (*People v. Mullens* (2004) 119 Cal.App.4th 648, 660.)

---

**9**      The prosecution asserted that defendant's conduct constituted annoying or molesting a child under the age of 18 in violation of section 647.6, subdivision (a)(1).  This qualifies as a "sexual offense" for purposes of Evidence Code section 1108.  (Evid. Code, § 1108, subd. (d)(1)(A).)  Defendant concedes that the uncharged conduct, if true, potentially would constitute a sexual offense within the meaning of the statute.

**10**      We express no opinion on whether the uncharged sexual acts were sufficiently similar to be admissible under Evidence Code section 1101, but they were not required to be; Evidence Code section 1108 was enacted specifically to overcome the more exacting similarity requirements under prior law.  (*People v. Soto* (1998) 64 Cal.App.4th 966, 983-984.)

The remoteness of the uncharged offenses also is a relevant factor, decreasing the evidence's probative value, but this factor also does not compel exclusion. There are no rigid time limits for determining when an uncharged offense is too remote to be inadmissible. (*Cordova, supra*, 62 Cal.4th at p. 133.) Numerous cases have upheld admission under Evidence Code section 1108 of prior uncharged sex crimes occurring decades before the charged offense. (See, e.g., *Cordova*, at p. 133 [upholding admission of sex crimes occurring 13 and 18 years before the current crime]; *People v. Frazier, supra*, 89 Cal.App.4th at p. 41 [admission of sex crimes against young female relatives going back 20 years]; *People v. Soto, supra*, 64 Cal.App.4th at pp. 974, 977-978, 990-992 [uncharged sexual conduct that occurred 20 to 30 years before the trial]; *People v. Pierce* (2002) 104 Cal.App.4th 893, 900 [23-year-old rape conviction]; *People v. Robertson* (2012) 208 Cal.App.4th 965, 992 [30-year-old kidnapping and rape].)

The remoteness of an uncharged offense, like its similarity to the charged offense, is but one of many factors for the court to consider, and generally goes to the weight of the evidence, not its admissibility. (*People v. Hernandez, supra*, 200 Cal.App.4th at p. 968 [passage of time generally goes to the weight of the evidence, not its admissibility].) Here, we cannot say the amount of time between the uncharged conduct and the charged offenses renders the evidence inadmissible. Other than not being arrested for a sexual offense, defendant has failed to point to any evidence showing that his character changed over the intervening years. (See *Cordova, supra*, 62 Cal.4th at p. 133.) In contrast, there is evidence that it did not, including the evidence that he secretly recorded himself and mother having sex and a sexually suggestive photograph of his sister-in-law found on the family computer that he set up.

Turning to the prejudicial effect of the evidence, the evidence that defendant touched his sister inappropriately and propositioned her for sex was not more inflammatory than the charged offenses that he sexually molested his daughter and recorded her undressing in his bathroom. The jury would not have been tempted to

convict defendant of the charged offenses merely to punish him for the uncharged conduct. That E.S. was an adult when she testified at trial further diminished the risk of undue prejudice. (See *Holford, supra*, 203 Cal.App.4th at p. 186.) In addition, there was little probability of confusing the jury, as the uncharged conduct involved separate incidents, and the presentation of the evidence did not consume an undue amount of time.

Weighing these factors, we conclude the trial court did not abuse its discretion in admitting the uncharged sexual offenses involving E.S. as propensity evidence under Evidence Code section 1108.

## II

### *The Uncharged Sexual Offense(s) Involving the Photograph of R.K.*

Over defendant's objection,[11] the trial court permitted the prosecution to admit evidence of defendant's possession of a photograph of R.K. in which she is partially clothed. The trial court ruled that defendant's possession of the photograph was an uncharged sexual offense—namely, possession of child pornography (§ 311.11)—admissible under Evidence Code section 1108 to prove defendant's propensity to commit the charged sexual offenses. Again, we review this ruling for an abuse of discretion. (*Holford, supra*, 203 Cal.App.4th at p. 168.)

Defendant contends the trial court abused its discretion in admitting the evidence relating to the photograph of R.K. Defendant contends the evidence should have been excluded for three reasons: (1) it was insufficient to support a determination that possession of the photograph constituted a "sexual offense"; (2) it was insufficient to support a determination that defendant "knowingly" possessed the photograph; and (3) the evidence was more prejudicial than probative and therefore should have been excluded under Evidence Code section 352.

---

[11]    Defendant filed a motion in limine to exclude the photographic evidence.

We cannot say the trial court abused its considerable discretion in allowing the evidence. To begin, we conclude that a trier of fact reasonably could find that possession of the photograph constituted a sexual offense. As defendant admits, Evidence Code section 1108 defines a "sexual offense" to include a violation of section 311.11, which makes it a crime to knowingly possess or control any matter, the production of which involves the use of a person under 18 years of age, knowing that the matter depicts a person under 18 years of age engaging in or simulating "sexual conduct." (§ 311.11, subd. (a); Evid. Code, § 1108, subd. (d)(1)(A).) The term "sexual conduct," in turn, is defined to include "exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer." (§§ 311.11, subd. (a), 311.4, subd. (d)(1).)

Case law establishes that an illicit "exhibition" does not require full or even partial nudity of the genitals, pubic, or rectal area. (*People v. Kongs* (1994) 30 Cal.App.4th 1741, 1756-1757 (*Kongs*); *People v. Spurlock* (2003) 114 Cal.App.4th 1122, 1127-1130.) It may, in appropriate cases, include an image that "unnaturally" focuses upon a child's clothed genital area to " 'excite lustfulness or sexual stimulation of the viewer.' "[12] (*Kongs, supra*, at pp. 1754, 1756.)

Based on the agreed-upon description of the photograph of R.K.—an image in which she appears to be asleep on the floor, wearing only a bra and thong underwear, with her pants around her ankles—we conclude that a trier of fact reasonably could find

---

[12] *Kongs* identified six factors for a trier of fact to consider in determining whether an image is an illicit exhibition of a child's genitals or pubic or rectal area: (1) whether the focal point is on the child's genitalia, pubic, or rectal area; (2) whether the setting is sexually suggestive (i.e., in a place or pose generally associated with sexual activity); (3) whether the child is in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed or nude; (5) whether the child's conduct suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the conduct is intended or designed to elicit a sexual response in the viewer. (*Kongs, supra*, 30 Cal.App.4th at pp. 1754-1755.) Only the last factor is a required element of a finding of "sexual conduct" under section 311.4. (*Id*. at p. 1755.)

the photograph was an illicit exhibition of R.K.'s genitalia, pubic, or rectal area, intended to elicit a sexual response in the viewer as she is depicted in an unnatural position, wearing inappropriate attire for her age at the time, with her genitals or rectal area as the possible focal point of the photograph.[13] (*People v. Jacobo* (2019) 37 Cal.App.5th 32, 48-51.)

A reasonable trier of fact also could conclude that defendant knowingly possessed the photograph based on defendant's history of sex crimes involving young, female relatives, the fact the photograph was found in his computer, the evidence that he set up the user accounts on the computer and had administrator access privileges, and the testimony of R.K. and mother, who denied any knowledge of the photograph or when it was taken. Thus, although the evidence was mostly circumstantial, the trial court did not abuse its discretion in concluding that a reasonable jury could find that defendant committed the uncharged sexual offense.

As to its probative value, the evidence was relevant to show that defendant had an unnatural or abnormal sexual interest in young girls and a disregard for the personal boundaries of female family members. It also was probative to show that defendant intended to secretly record S.D. with his phone and that the recording was not accidental. (See, e.g., *People v. Memro* (1995) 11 Cal.4th 786, 865, abrogated in part on other grounds as stated in *People v. McKinnon* (2011) 52 Cal.4th 610, 639, fn. 18.) The probative value of this evidence was increased by the independent source of the evidence, but reduced by the remoteness of the uncharged conduct, the degree of certainty that

---

**13** Because the photo of R.K. was not included in the record on appeal, nor described by witnesses at trial, we are compelled to rely on the parties' somewhat vague description of the photo. Because it is defendant's burden to demonstrate error, any uncertainty as to what the photo depicts must be resolved against him. (*People v. $17,522.08 United States Currency* (2006) 142 Cal.App.4th 1076, 1084.)

defendant committed the uncharged conduct, and the dissimilarities between the uncharged conduct and the charged offenses (especially the child molestation counts).

On the other hand, the potential prejudicial impact of the evidence was low.[14] The evidence was not inflammatory compared to the charged offenses; the jury was not likely to be confused or misled by the evidence; and the burden on defendant in defending against the uncharged conduct was relatively light. Weighing these factors, we cannot say the trial court abused its discretion in determining the prejudicial impact did not substantially outweigh the probative value.

III

*Sufficiency of the Evidence as to Count Two*

Defendant argues that the evidence introduced at trial was insufficient to allow a reasonable jury to conclude beyond a reasonable doubt that the lewd and lascivious conduct underlying count two involved a different act than count one because S.D.'s testimony was too generic. We disagree.

A defendant challenging the sufficiency of the evidence bears an "enormous burden." (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.) "It is the exclusive function of the trier of fact to assess the credibility of witnesses and draw reasonable inferences from the evidence. [Citations.]" (*Ibid.*) Thus, when considering a challenge to the sufficiency of the evidence, we view the facts in the light most favorable to the judgment, resolving all conflicts in the evidence and drawing all reasonable inferences in support of the trier of fact's determination. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 483-484.) We reverse only if, viewing the evidence in the light most favorable to

---

**14**    It bears mention that the prejudice which Evidence Code section 352 is designed to avoid is not the damage that naturally flows from the probative value of the evidence, but the emotional bias against the defendant as an individual based on extraneous factors. (*Holford, supra*, 203 Cal.App.4th at p. 167; *People v. Zapien* (1993) 4 Cal.4th 929, 958.)

16

the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  (*Ibid*.)

In *People v. Jones* (1990) 51 Cal.3d 294 (*Jones*), our Supreme Court addressed the quantum of proof necessary to support a conviction in a child molestation case.  (*Id*. at pp. 314-316.)  The court held that even "generic" testimony regarding multiple molestations over a period of time—unspecific as to time, place or circumstance—is sufficiently substantial to support a conviction.  (*Id*. at pp. 313-314.)

The court reasoned that the particular details surrounding a child molestation charge are not elements of the offense and are therefore unnecessary to sustain a conviction.  (*Jones, supra*, 51 Cal.3d at p. 315.)  To provide substantial evidence, the victim merely must describe (1) the kind of act or acts committed with sufficient specificity to assure that unlawful conduct indeed occurred and to differentiate between the various acts of proscribed conduct; (2) the number of acts committed with sufficient certainty to support each of the counts alleged; and (3) the general time period in which the acts occurred, to assure they were committed within the applicable limitation period.  (*Id*. at pp. 315-316.)  "Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction."  (*Id*. at p. 316.)

In *Jones*, the victim testified that molestations recurred once or twice a month over a roughly two-year period of time.  (*Jones, supra*, 51 Cal.3d at pp. 303, 322-323.)  The Supreme Court held that the victim's testimony constituted substantial evidence to support the six counts of child molestation, each charging one event in a different two-month period.  (*Ibid*.)  The court cited with approval the analysis in *People v. Moore* (1989) 211 Cal.App.3d 1400, in which the victim "specified the type of conduct involved (rape) and its frequency ('almost every night' for three months), and confirmed that such conduct occurred during the limitation period," concluding that "[n]othing more is required to establish the substantiality of the victim's testimony in child molestation

cases."  (*Jones*, at p. 316; see also *People v. Garcia* (2016) 247 Cal.App.4th 1013, 1017-1023 [evidence sufficient because it proved that defendant committed at least the number of offenses charged].)

Here, S.D. testified that she recalled two incidents, both of which occurred in her parents' bedroom, during which defendant lifted her up and put his fingers inside of her vagina.  She testified that this "same thing" happened "[a]t least four times" when she was about 10 years old and in the fourth grade.  Under *Jones*, S.D.'s testimony is sufficient to prove that defendant committed at least two acts of molestation within the applicable limitations period.  (§ 801.1 [statute of limitations].)

DISPOSITION

The judgment is affirmed.


        KRAUSE        , J.


We concur:


    ROBIE        , Acting P. J.


    HOCH        , J.