Filed 4/13/21  P. v. Sylverain CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073082 |
| v. | (Super.Ct.No. SWF1700575) |
| ANDY SYLVERAIN, | ORDER MODIFYING OPINION; AND DENIAL OF PETITION FOR REHEARING |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

The petition for rehearing filed by appellant on March 30, 2021, is denied.  The opinion filed in this matter on Mar, is modified as follows:

I.      On page 4, the first sentence in the paragraph just prior to the Discussion section:  September to October 2017 is changed to September through October 2017. The fourth sentence in the same paragraph is changed from "In Count 22, defendant was charged with annoying and molesting Victim-2 from January to September 2016 is changed to "In Count 22, defendant was charged with annoying and molesting Victim-2 from January to September 5, 2016."

1

II. The content of Discussion subsection "A. <u>SUBSTANTIAL EVIDENCE</u>" is deleted and replaced with the following:

A. <u>SUBSTANTIAL EVIDENCE</u>

Defendant contends substantial evidence does not support his two convictions for annoying or molesting a minor. (§ 647.6, subd. (a)(1).)

One element of annoying or molesting a minor is that the "defendant engaged in conduct directed at a child." (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1161.) In *People v. Phillips* (2011) 188 Cal.App.4th 1383 (*Phillips*), the defendant was masturbating in his vehicle, which was parked in front of a high school. Fifteen-year-old S.L. walked by the defendant's vehicle and saw him masturbating. (*Id.* at pp. 1386-1387.) The defendant argued that his section 647.6 conviction was improper because "there was no evidence that his actions were directed at the particular victim, S.L." (*Phillips*, at p. 1388, fn. omitted.)

In discussing whether section 647.6 requires a specific child to be targeted, the *Phillips* court wrote that if a voyeur engages in annoying conduct but does not intend to be observed by a child, then the voyeur would not be guilty of violating section 647.6. (*Phillips*, *supra*, 188 Cal.App.4th at pp. 1394-1395.) Further, the appellate court wrote, "In addition, under Penal Code section 647.6, subdivision (a)(1) there must be evidence that the perpetrator 'directed' the conduct toward a child. [Citation.] The intent to be observed while engaging in the offensive conduct is subsumed in the element that the offender 'directs' his conduct toward a child." (*Id.* at p. 1394.) Relying on the second sentence just quoted and the voyeur discussion, defendant asserts there is not substantial

2

evidence of him directing his conduct toward a child because he did not intend to be observed.

Defendant's reliance on *Phillips* is misplaced. Contrary to defendant's assertion, *Phillips* did not hold that a defendant must have intended to be observed to be guilty of annoying or molesting a child. This is demonstrated by the fact that when the *Phillips* court summarized the elements necessary for a violation of section 647.6, it did not include the specific intent to be observed as one of the elements. (*Phillips*, *supra*, 188 Cal.App.4th at p. 1396.) Moreover, the *Phillips* court concluded that the jury instruction (CALCRIM No. 1122), which does not include an intent to be observed, was properly given in the case.[1] (*Id*. at pp. 1388, 1393.)

---

[1] In *Phillips*, the appellate court quoted the relevant portion of the jury instruction as providing, "The defendant is charged [in Count ____] with annoying or molesting a child [in violation of Penal Code section 647.6]. [¶] []To prove that the defendant is guilty of this crime, the People must prove that:
   " '1. The defendant engaged in conduct directed at a child;
   " '2. A normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct;
   " '3. The defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child . . . .' (CALCRIM No. 1122 . . . .)' " (*Phillips*, *supra*, 188 Cal.App.4th at p. 1393.)
   In the instant case, for the section 647.6, subdivision (a)(1), charges, the jury was instructed as follows: "The defendant is charged in Counts 21 and 22 with annoying or molesting a child. [¶] To prove that the defendant is guilty of this crime, the People must prove that:
   "1. The defendant engaged in conduct directed at a child;
   "2. A normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct.
   "3. The defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child;
   "AND
   "4. The child was under the age of 18 years at the time of the conduct.
"It is not necessary that the child actually be touched." (CALCRIM No. 1122.)

Nor did *Phillips* say that proof of an intent to be observed is the only way to establish that conduct is directed toward a child. *Phillips* merely concluded that if a defendant had the intent to be observed by a child, then one can reasonably conclude the defendant directed his conduct toward a child. (*Phillips*, *supra*, 188 Cal.App.4th at p. 1394.)

Further, a voyeur can violate section 647.6, subdivision (a)(1), when the voyeurism is "combined with affirmative conduct which could ordinarily cause annoyance or offense." (*People v. Kongs* (1994) 30 Cal.App.4th 1741, 1751.) As an example, in *People v. Kongs* the defendant attended "events at which numerous photographers take pictures of models of varying ages so that both the photographers and the models can develop portfolios." (*Id.* at p. 1746.) The defendant was a photographer at the events. The defendant photographed girls wearing skirts and directed them to "lift their legs and knees up in the air so as to expose their underwear, then [the defendant] focus[ed] his camera on the area between their legs." (*Id.* at p. 1747.) The appellate court explained that the defendant's "subterfuge of pretending to be a legitimate photographer while clandestinely trying to peek at the models' genital areas . . . is the factor that makes [the defendant's] voyeuristic conduct annoying or offensive to the average person under Penal Code section 647.6. If any analogy is to be made here, it would more appropriately be made to a 'peeping Tom.' " (*Id.* at p. 1752.) The appellate court concluded the trial court erred by setting aside the information (§ 995). (*People v. Kongs, supra,* 30 Cal.App.4th at p. 1746.)

4

Under the substantial evidence standard, we look at the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found defendant guilty. (*People v. Hatch* (2000) 22 Cal.4th 260, 272.)

Here there is evidence of defendant directing his conduct toward children. Victim-1 said defendant's phone appeared in her room five or six times during October 2017, and it always appeared before she showered. Victim-1 had her own bedroom; she did not share it with an adult or sibling. Victim-2 found the spy pen in her bedroom after she showered. Victim-2 had her own bedroom; she did not share her bedroom with an adult or sibling. From the recording occurring in the victims' bedrooms, one can reasonably find that defendant's conduct was directed toward the victims, who were minors.

Moreover, defendant took affirmative steps beyond voyeurism by encouraging the victims to shower around the times that he placed the cameras in their bedrooms. When testifying about the video recordings, Victim-1 explained, "[T]hat's how all these situations went before. He'd ask me, you need to take a shower, or when are you going to take a shower." Victim-2 testified that, after a trip to Disneyland, defendant "was urging us to take a shower as soon as we got inside," which was odd because the victims "already know to take [their] showers." After taking a shower that evening, Victim-2 found a spy pen in her bedroom.

Defendant's acts of encouraging the victims to shower, which necessarily involves undressing, is analogous to the defendant in *Kongs* who encouraged children to "lift their legs and knees up in the air so as to expose their underwear." (*People v.*

5

*Kongs, supra*, 30 Cal.App.4th at p. 1747.)  Accordingly, substantial evidence supports the element of defendant's affirmative conduct being directed toward children.

Next, defendant asserts that a person would not be annoyed by a secret recording because the person would have no knowledge of the recording.  Victim-2 discovered the spy pen in her room, while wearing a towel, after taking a shower.  Victim-2 noticed the pen had an orange light and saw it had a camera.  During October 2017, Victim-1 found recording devices in her bedroom five or six times, typically the recording devices were placed there before she showered.  Victim-1 testified, "And [defendant] would say, 'make sure you take a shower when you're done.'  And when I go in my room there would always be a camera up on my shelf but not like a camera, a phone, his phone in my room, and it would be on the top shelf behind a red box."  Victim-1 did not notice the phone/camera immediately upon entering her room but saw it when "grab[bing] something off that shelf."  The victims learned they were being recorded while the recording was happening.  Because the victims were aware of defendant recording them, we find defendant's "lack of knowledge" argument is contrary to the evidence.

III.    Because footnote No. 2 was removed, footnote No. 4 is renumbered footnote No. 3.

6

Except for these modifications, the opinion remains unchanged.  The modifications do not effect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER                                
Acting P. J.


We concur:


SLOUGH                            
J.


FIELDS                            
J.

Filed 3/16/21  P. v. Sylverain CA4/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073082 |
| v. | (Super.Ct.No. SWF1700575) |
| ANDY SYLVERAIN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Kelly L. Hansen, Judge.  Affirmed.

Innocence Legal Team and William P. Daley for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Quisteen S. Shum and Ksenia D. Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant guilty of 10 counts of committing a lewd or lascivious act upon a child who is 14 or 15 years old (Pen. Code, § 288, subd. (c)(1))[2]; one count of attempting to commit a lewd or lascivious act upon a child who is 14 or 15 years old (§§ 664, 288, subd. (c)(1)); and two counts of annoying or molesting a minor (§ 647.6, subd. (a)(1)). The trial court sentenced defendant to prison for a term of three years four months.

Defendant raises three issues on appeal. First, defendant contends substantial evidence does not support his two convictions for annoying or molesting a minor (§ 647.6, subd. (a)(1)). Second, defendant asserts text messages were received into evidence without proper authentication. Third, defendant contends it was improper to let one of the victims testify about a conversation that had been secretly recorded. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Victim-1 was born in September 2001. Victim-2 was born in October 2000. Defendant was born in July 1982. Victim-1 and Victim-2 (collectively, the victims) are sisters. Defendant is the victims' stepfather.

In Spring 2016, defendant entered Victim-1's bedroom during the night while Victim-1 was in bed. Defendant moved the sheets away from Victim-1 and then tried to remove her clothes. Defendant touched Victim-1's vagina underneath her clothes. Victim-1 pretended to sleep. Similar touching incidents occurred over a month-long

---

[2] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

period, and defendant entered Victim-1's bedroom approximately 20 times during that month.

In May or June 2016, defendant entered Victim-2's bedroom during the night. Victim-2 slept in a nightshirt that went to her mid-thigh. Defendant moved the covers away from Victim-2 and pushed her nightshirt up to her waist. Victim-2 was awake but kept her eyes closed. Victim-2 "toss[ed] and turn[ed]" to prevent defendant from touching her body. Defendant came into Victim-2's bedroom more than 10 times. Each incident was similar, with defendant pushing up her nightshirt, and Victim-2 moving to avoid being touched. In May 2016, defendant placed a spy pen in Victim-2's bedroom. The spy pen recorded Victim-2 dressing after taking a shower.

In June or July 2016, the victims told their mother (Mother) about the touching. Defendant moved out of the home for one or two months, but then returned. Defendant was deployed to the Middle East from October 2016 to May 2017.

In May 2017, defendant placed a spy pen in Victim-1's bedroom. The spy pen recorded Victim-1 undressing. In October 2017, defendant placed a phone in Victim-1's room to record her. Victim-1 was undressing in her bedroom when she noticed the phone recording her. Victim-1 found recording devices in her room five or six times.

In September 2017, the touching incidents resumed. Defendant entered Victim-1's bedroom, moved her sheets, pulled Victim-1's clothes to the side, and touched Victim-1's breasts and vagina. One night, defendant said " 'Kiss me, [Victim-1].' " Victim-1 turned over, and defendant moved her back and kissed her.

3

In October 2017, the victims told Mother that the molestation incidents had resumed. Mother confronted defendant and told him to leave the house, and defendant left. Around October 28, 2017, the victims spoke to the police about the molestations. Defendant testified at trial. During his testimony, defendant described his conduct as an "invasion of privacy." At the time of defendant's trial, in March 2019, Mother and defendant were in the process of divorcing.

In Count 21, defendant was charged with annoying and molesting Victim-1 from September to October 2017. (§ 647.6, subd. (a).) During closing argument, the prosecutor asserted Count 21 consisted of "the recording and the touching" of Victim-1. In Count 22, defendant was charged with annoying and molesting Victim-2 from January to September 2016. (§ 647.6, subd. (a).) During closing argument, the prosecutor asserted Count 22 consisted of "the secret recordings of [Victim-2]."

## DISCUSSION

### A.    SUBSTANTIAL EVIDENCE

Defendant contends substantial evidence does not support his two convictions for annoying or molesting a minor (§ 647.6) because the victims were unaware that they were being recorded; and because they were not aware of the recording, the recording was not annoying.

Under the substantial evidence standard, we look at the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found defendant guilty. (*People v. Hatch* (2000) 22 Cal.4th 260, 272.)

Section 647.6, subdivision (a)(1), prohibits annoying or molesting a minor. "[T]he words 'annoy' and 'molest' . . . are synonymous and generally . . . [¶] relate to offenses against children, with a connotation of abnormal sexual motivation.  The forbidden annoyance or molestation is not concerned with the child's state of mind, but rather refers to the defendant's objectionable acts that constitute the offense.  [Citation.] [¶]  Accordingly, to determine whether the defendant's conduct would unhesitatingly irritate or disturb a normal person, we employ an objective test not dependent on whether the child was in fact irritated or disturbed." (*People v. Lopez* (1998) 19 Cal.4th 282, 289-290.)

As an example, in *People v. Kongs* (1994) 30 Cal.App.4th 1741 the defendant attended "events at which numerous photographers take pictures of models of varying ages so that both the photographers and the models can develop portfolios." (*Id*. at p. 1746.)  The defendant was a photographer at the events.  The defendant photographed girls wearing skirts and directed them to "lift their legs and knees up in the air so as to expose their underwear, then [the defendant] focus[ed] his camera on the area between their legs." (*Id.* at p. 1747.)  The appellate court explained that the defendant's "subterfuge of pretending to be a legitimate photographer while clandestinely trying to peek at the models' genital areas . . . is the factor that makes [the defendant's] voyeuristic conduct annoying or offensive to the average person under Penal Code section 647.6." (*Id.* at p. 1752.)  The appellate court held that "[a] fact finder could . . . objectively conclude that the average person would be unhesitatingly irritated or

5

offended by a photographer surreptitiously aiming his camera up a child's dress rather than photographing her face or entire clothed body." (*Id.* at p. 1751.)

Defendant asserts that a person would not be annoyed by a secret recording because the person would have no knowledge of the recording. Victim-2 discovered the spy pen in her room, while wearing a towel, after taking a shower. Victim-2 noticed the pen had an orange light and saw it had a camera. During October 2017, Victim-1 found recording devices in her bedroom five or six times, typically the recording devices were placed there before she showered. Victim-1 testified, "And [defendant] would say, 'make sure you take a shower when you're done.' And when I go in my room there would always be a camera up on my shelf but not like a camera, a phone, his phone in my room, and it would be on the top shelf behind a red box." Victim-1 did not notice the phone/camera immediately upon entering her room but saw it when "grab[bing] something off that shelf." The victims learned they were being recorded while the recording was happening. Because the victims were aware of defendant recording them, we find defendant's "lack of knowledge" argument is contrary to the evidence.[3]

Defendant also contends that the evidence failed to establish the requisite intent. Defendant cites to the case of *People v. Phillips* (2011) 188 Cal.App.4th 1383, to support his contention. In *Phillips*, the defendant was masturbating in his vehicle,

---

[3] Because the victims in this case had knowledge of defendant's conduct, we need not decide in this case whether a conviction under section 647.6, subdivision (a)(1), is permissible when victims lack knowledge of a defendant's conduct. In other words, we leave for another day the issue of whether a victim's knowledge of a defendant's annoying conduct is an element of section 647.6, subdivision (a)(1).

6

which was parked in front of a high school. Fifteen-year-old S.L. walked by the defendant's vehicle and saw him masturbating. (*Id.* at pp. 1386-1387.) The defendant argued that his section 647.6 conviction was improper because "there was no evidence that his actions were directed at the particular victim, S.L." (*Id.* at p. 1388, fn. omitted.)

In discussing the issue, the appellate court wrote, "In addition, under Penal Code section 647.6, subdivision (a)(1) there must be evidence that the perpetrator 'directed' the conduct toward a child. [Citation.] The intent to be observed while engaging in the offensive conduct is subsumed in the element that the offender 'directs' his conduct toward a child." (*People v. Phillips*, *supra*, 188 Cal.App.4th at p. 1394.) The appellate court concluded the defendant's intent to be observed could be found from circumstantial evidence, such as the type of vehicle he was in, where the vehicle was parked in relation to the children, and the time of day. The court also explained that intent "may be easily proved if the child victim is a specific child, known in advance to the offender." (*Id.* at p. 1395.)

In the instant case, defendant asserts he lacked the intent to be observed. Section 647.6, subdivision (a)(1) does not require an intent to be observed. Rather, section 647.6 is a general intent crime but requires a " 'mental state element' of motivation by an unnatural or abnormal sexual interest" in children. (*Ruelas v. Superior Court* (2015)

235 Cal.App.4th 374, 379.)  In other words, section 647.6, subdivision (a)(1) is not a specific intent crime—it is a general intent crime with a motive requirement.[4]  (*Ibid.*)

Here there is evidence of defendant being motivated by a sexual interest in children.  Victim-1 said defendant's phone appeared in her room five or six times during October 2017, and it always appeared before she showered.  Victim-2 found the spy pen in her bedroom after she showered.  One can reasonably infer from the recording occurring around the time of the victims' showers that defendant was interested in seeing the victims when they were nude.  One can reasonably infer that defendant wanted to see the victims nude because he was motivated by a sexual interest in children.  Accordingly, substantial evidence supports the motive element of the two section 647.6 convictions.

B.    PRIOR CONSISTENT STATEMENT

1.    *PROCEDURAL HISTORY*

The People moved in limine to introduce a text conversation that occurred between Victim-2 and her friend (Friend) on Snapchat.  The People asserted the text

---

[4] For the section 647.6, subdivision (a)(1), charges, the jury was instructed as follows:  "The defendant is charged in Counts 21 and 22 with annoying or molesting a child.  [¶]  To prove that the defendant is guilty of this crime, the People must prove that:
"1.  The defendant engaged in conduct directed at a child;
"2.  A normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct.
"3.  The defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child;
"AND
"4.  The child was under the age of 18 years at the time of the conduct.
"It is not necessary that the child actually be touched."  (CALCRIM No. 1122.)

8

messages were admissible pursuant to the fresh complaint doctrine and that, in the text conversation, Victim-2 wrote about defendant's lewd and lascivious conduct. The People asserted the text conversation occurred on July 15, 2016, while the police report occurred approximately one year later. The People sought to question Victim-2 about her disclosure to Friend, but, at that time, the People did not seek to introduce a copy of the text conversation.

Defense counsel responded, "I think it is appropriate to come in as a prior consistent statement if that arises. But as far as a fresh complaint, I don't believe there has been a foundation established that this was close in time to the alleged incident." The trial court concluded the evidence would be admissible under the fresh complaint doctrine. The court ruled that Victim-2 could be questioned about "if she ever told anyone about this type of touching, when that occurred, and the method in which that communication occurred. And that will be it." The court said a copy of the text conversation would not be admitted. On direct, cross, and redirect examination, Victim-2 testified that, on July 5, 2016, she texted Friend about "what the defendant had been doing."

During the direct examination of defendant, he testified that the allegations in the instant case had caused difficulties in his divorce case. Defendant said the victims lied about him touching them. Defendant believed the victims were lying to support Mother in the divorce case. On cross-examination, defendant again said the victims were lying and that he believed Victim-2 was trying to assist Mother in the divorce.

9

A lunch recess took place in the midst of defendant's testimony. During the recess, the prosecutor said that he had previously questioned Victim-2 about the text messages under the fresh complaint doctrine, but he wanted to recall her and question her about the text messages pursuant to the prior consistent statement exception to the hearsay rule.

Defense counsel objected. Defense counsel asserted Victim-2 was the source of the text messages and therefore could not authenticate them because she would essentially be vouching for her own credibility. Defense counsel expressed concern that Victim-2 could have manipulated the date of the text conversation. Defense counsel contended the prosecutor should have used a subpoena to obtain the text messages or called Friend to testify about the messages. Further, defense counsel asserted the text messages were more prejudicial than probative due to the lack of foundation. The prosecutor asserted defense counsel's authentication concerns went beyond the requirements of the law and that Victim-2 could provide the necessary foundation to authenticate the text messages.

The trial court ruled the text messages sent by Victim-2 were admissible as prior consistent statements and were more probative than prejudicial. As to defense counsel's concerns, the court said, "And the defense is welcome to cross-examine the witness as to their origin and also to point out in argument that it was a little self-serving that she presented the statements and there might have been other options to bring them in through neutral sources, and the weight will be for the jury to decide, but they will be admitted."

The prosecutor recalled Victim-2. The prosecutor showed the text messages to Victim-2. Victim-2 said the messages were the ones she sent to Friend on July 5, 2016, via Snapchat. Victim-2 explained that the text conversation was stored in her Snapchat account. Victim-2 said she had not edited the conversation, altered the date of the conversation, or changed the date on her phone to make the conversation appear to have a different date.

After Victim-2's testimony ended, the parties and the court discussed the exhibits. Defense counsel objected to the text messages on the bases that they involved compound hearsay and lacked foundation. The trial court overruled the objections and received the text messages into evidence.

2. *ANALYSIS*

Defendant contends the trial court erred by admitting "the full text of the conversation" between Victim-2 and Friend because there was insufficient foundation concerning the date of the conversation.

A text message is a writing. (Evid. Code, § 250.) The authenticity of a writing is a foundational issue that the proponent of the evidence must establish before the evidence may be admitted. (Evid. Code, § 403, subd. (a)(3).) "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (Evid. Code, § 1400.) "A writing may be authenticated by anyone who saw the writing made or executed, including a subscribing

11

witness." (Evid. Code, § 1413; see also *People v. Williams* (1997) 16 Cal.4th 635, 662 [a detective authenticated a recording of his conversation with the defendant].)

"The trial court has the preliminary, but not the final, authority to determine the question of the existence of the preliminary fact. Unlike in other situations [citation], under Evidence Code section 403, '[t]he preliminary fact questions listed in subdivision (a) [of Evidence Code section 403] . . . are not finally decided by the judge because they have been traditionally regarded as jury questions. The questions involve the credibility of testimony or the probative value of evidence that is admitted on the ultimate issues. It is the jury's function to determine the effect and value of the evidence addressed to it. . . . [T]he judge's function on questions of this sort is merely to determine whether there is evidence sufficient to permit a jury to decide the question. The "question of admissibility . . . merges imperceptibly into the weight of the evidence, if admitted." ' " (*People v. Lucas* (1995) 12 Cal.4th 415, 466-467.)

"Essentially, what is necessary is a prima facie case. 'As long as the evidence would support a finding of authenticity, the writing is admissible. The fact [that] conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.' " (*People v. Goldsmith* (2014) 59 Cal.4th 258, 267 (*Goldsmith*).) "The decision whether the foundational evidence is sufficiently substantial is a matter within the [trial] court's discretion." (*People v. Lucas*, *supra*, 12 Cal.4th at p. 466.) Therefore, we apply the abuse of discretion standard of review.

Victim-2 said she wrote the text messages on July 5, 2016. Because Victim-2 executed the text messages, she could properly authenticate the messages. (Evid. Code,

12

§ 1413; *Goldsmith*, *supra*, 59 Cal.4th at p. 267-268 [photographs can be authenticated by the person who took the photograph]; *People v. Smith* (2009) 179 Cal.App.4th 986, 990, fn. 3 ["Approximately 40 pages of Exhibit 1 were authenticated by the eight victims who testified that they executed a new agreement every time they invested"].) Because Victim-2 was a proper person to authenticate the text messages, the trial court could reasonably conclude that Victim-2's testimony provided sufficient foundational evidence indicating the text messages were written on July 5, 2016. In sum, the trial court did not err.

Defendant requests this court take judicial notice of his Google search results for the search "can you change date on snapchat." Defendant asserts, "Judicial Notice of such material, commonly available, is proper. (Evidence Code section[s] 459, 452.)" Defendant does not explain under what subdivision of Evidence Code section 452 this court could take judicial notice of Google search results. However, we infer from his assertion that the search results are "commonly available" that he is referring to Evidence Code section 452, subdivision (h), which permits judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." With the information defendant has provided, if we were to grant his request for judicial notice, we would be taking notice of the fact that when one searches "can you change date on snapchat," there are results for such a search. In other words, defendant has not provided us with information about the basic fact of changing dates on Snapchat; he has provided information about searching for such information. It is unclear how the search

13

result information is relevant.  Therefore, we deny defendant's request for judicial notice.  (*People v. Payton* (1992) 3 Cal.4th 1050, 1073 [items must be relevant to be judicially noticed].)  Besides, it does not appear such a request was made during the trial, at which the jury was deciding the credibility of Victim-2's testimony regarding the text messages.

Defendant contends, "If the date of the conversion [*sic*] was to be litigated in absence [*sic*] of business records from the internet service provider, or from Snap Chat [*sic*], additional testimony from an expert on the ability to change the date, was needed."  Defendant does not cite any legal authority explaining why business records or expert testimony is necessary to authenticate a writing.  Given the law that reflects a writing may be authenticated by one who executed the writing (*Goldsmith*, *supra*, 59 Cal.4th at p. 267-268 [photographs can be authenticated by the person who took the photograph]; *People v. Smith*, *supra*, 179 Cal.App.4th at p. 990, fn. 3 [exhibit authenticated by victims]), defendant would need to provide legal authority to explain why Victim-2's testimony is legally inadequate to authenticate the text messages.

Defendant asserts that, without authentication of the date of the text messages, the trial court erred by finding the text messages were more probative than prejudicial. (Evid. Code, § 352.)  We have concluded *ante* that the trial court did not err by concluding Victim-2's testimony provided sufficient foundational evidence for the date of the text messages.  Accordingly, because we have rejected the premise of the defendant's assertion, i.e., that the text messages were not properly authenticated, we do

14

not address the probative value versus prejudice contention that is based on that premise.

Defendant asserts the trial court erred by admitting the text messages into evidence because defendant did not have time to obtain evidence from Snapchat to establish that Victim-2 may have altered the date of the text conversation. Defendant asserts it would have taken "at least months, if not years" to obtain the evidence from Snapchat. In the trial court, defendant did not request a continuance to obtain evidence regarding altering dates within Snapchat. Rather, defendant argued, "[T]he People have the burden to bring in somebody to say, 'This is a legitimate e-mail.' " Because defendant did not request a continuance in the trial court, defendant has forfeited the argument that the trial court erred by admitting the text messages when defendant lacked time to gather evidence in response. (*People v. Fuiava* (2012) 53 Cal.4th 622, 653 ["Defendant forfeited this claim by failing to raise this issue below, when the trial court could have remedied the alleged shortcoming"].)

Defendant asserts the trial court erred by relying only on defense counsel's opening statement for the proposition that the defense alleged Victim-2 fabricated her testimony.[5] That argument fails because the prosecutor moved to introduce the content

---

[5] Evidence Code section 791, which concerns prior consistent statements provides, "Evidence of a statement previously made by a witness that is consistent with [her] testimony at the hearing is inadmissible to support [her] credibility unless it is offered after: [¶] . . . [¶] An express or implied charge has been made that [her] testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen." (See also Evid. Code, § 1236.)

of the text messages only after defendant testified about the victims allegedly fabricating their accusations against defendant. Accordingly, we are not persuaded that the trial court relied solely on defense counsel's opening statement for the proposition that the defense accused the victims of fabricating their accusations against defendant.

C.      RECORDED CONVERSATION

1.      *PROCEDURAL HISTORY*

In October 2017, Victim-1 told defendant she found the phone/camera in her bedroom that was recording her. Defendant told Victim-1 they would have a conversation about it when she finished showering. After Victim-1 finished her shower, she set her phone to record and put it in her pocket for the purpose of recording her conversation with defendant. The prosecutor asked Victim-1 what was said during the conversation. Victim-1 testified about the conversation. The recording of the conversation was not presented to the jury. Defendant also testified about the conversation.

2.      *ANALYSIS*

Defendant contends that, while Victim-1 could properly testify about the conversation, it was erroneous to tell the jury that the conversation had been recorded because that made it "as if [the recording] had been played for the jury," and it is illegal to secretly record a conversation. The People assert defendant forfeited this issue by failing to raise it in the trial court. We agree that the issue has been forfeited, but for the sake of thoroughness will address defendant's contention.

16

"A person who, intentionally and without the consent of all parties to a confidential communication, uses a[] . . . recording device to . . . record the confidential communication, [where] the communication is carried on among the parties in the presence of one another . . . shall be punished . . . ." (§ 632, subd. (a).) "Except as proof in an action or prosecution for violation of this section, evidence obtained as a result of . . . recording a confidential communication in violation of this section is not admissible in any judicial, administrative, legislative, or other proceeding." (§ 632, subd. (d).)

Our Supreme Court has held that "to the extent section 632(d) demanded the suppression of relevant evidence in a criminal proceeding, it was abrogated" by the "Right to Truth-in-Evidence" provision of the Constitution, which provides " 'relevant evidence shall not be excluded in any criminal proceeding.' " (*People v. Guzman* (2019) 8 Cal.5th 673, 677, fn. omitted.) Thus, if a recording is relevant evidence, it " 'shall not be excluded' " in a criminal trial. (*Id.* at p. 683.) Accordingly, defendant's premise that it would have been improper to present the recording to the jury is questionable, given our Supreme Court's holding in *People v. Guzman*.

Even if defendant's premise were not questionable, his contention would nevertheless fail because the recording was not presented to the jury. A witness who recalls from memory a conversation that happened to be recorded can testify about the conversation. (*Frio v. Superior Court* (1988) 203 Cal.App.3d 1480, 1493.) Section 632 does not "remove the risk inherent in speaking, namely, the risk the party to whom the remarks are addressed might later repeat the conversation." (*Frio*, at p. 1493, fn.

17

omitted.)  Thus, Victim-1 could properly testify about her recollection of the conversation with defendant.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER _____
                                                                Acting P. J.


We concur:


SLOUGH _____
                                        J.


FIELDS _____
                                        J.


18